STATE OF NEBRASKA, APPELLEE, V. DENNIS RYAN, APPELLANT.
543 N.W.2d 128

Filed February 2, 1996.  No. S-94-1202.

J. William Gallup for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Dennis Ryan filed a postconviction relief motion in the district court for Richardson County asking that his conviction and sentence for second degree murder be vacated. He claimed that in its instructions, the trial court had erred in failing to include "malice" as an essential element of the crime for which he was convicted.

Following a hearing, the district court denied Ryan the relief he prayed for and Ryan timely appealed to this court from that judgment.

We find that, as a matter of law, the jury instructions given in Ryan's trial violated Ryan's rights under the U.S. and Nebraska Constitutions and that his conviction and sentence are void. As a result, we reverse the postconviction relief judgment of the district court and remand the cause to that court with direction to vacate its postconviction relief judgment and grant Ryan a new trial.

## STANDARD OF REVIEW

A criminal defendant seeking postconviction relief has the burden of establishing a basis for such relief, and the findings of the district court will not be disturbed unless clearly erroneous. *State v. Barfoot*, 248 Neb. 335, 534 N.W.2d 572 (1995). In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. See *State v. Barrientos*, 245 Neb. 226, 512 N.W.2d 144 (1994).

In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995).

## FACTS

The facts underlying this case are fully set forth in Ryan's direct appeal. See *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987). The State charged Ryan by information with first degree murder. At trial, Ryan's major defense was his state of mind at the time of the murder. Following a jury trial, Ryan was convicted of second degree murder. He was sentenced to life imprisonment.

The jury was told in instruction No. 7 the material elements of first degree murder, second degree murder, and manslaughter. Section II of instruction No. 7 told the jury:

> The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime of murder in the second degree are:
>
> (1) That defendant Dennis Ryan, on or about April 30, 1985, did kill James Thimm, either alone or while aiding and abetting another;
>
> (2) That he did so in Richardson County, Nebraska;
>
> (3) That the defendant did so intentionally, but without premeditation.
>
> The State has the burden of proving beyond a reasonable doubt each and every one of the foregoing material elements of the crime of murder in the second degree in order to convict the defendant of the crime of murder in the second degree.
>
> *If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements of this Section II is true, it is your duty to find the defendant guilty of the crime of murder in the second degree done purposely and maliciously but without deliberation and premeditation, and you shall so indicate by your verdict,* unless you find that the defendant is not responsible by reason of insanity as set forth in Instruction No. _7A_ .
>
> If, on the other hand, you find that the State has failed to prove beyond a reasonable doubt any one or more of the material elements in Section I and that the State has failed to prove any one or more of the material elements in Section II, it is your duty to find the defendant not guilty of the crime of murder in the second degree. You shall

then proceed to consider the lesser included offense of manslaughter set out in Section III below.

(Emphasis supplied.)

Through his trial counsel, Ryan filed a direct appeal of his conviction to this court. At that time, the giving of jury instruction No. 7 was not assigned as error. Rather, Ryan assigned that the trial court erred in (1) failing to grant his motion to waive jurisdiction to the juvenile court, (2) receiving into evidence various photographs, (3) excluding certain testimony, (4) sustaining a codefendant's objections to the introduction of two depositions, (5) refusing to give certain requested jury instructions, and (6) imposing an excessive sentence. Upon review of the assigned errors, this court affirmed Ryan's conviction. *State v. Ryan, supra.*

On June 29, 1990, Ryan, represented by different counsel, filed a second amended motion for postconviction relief. Again, the giving of instruction No. 7 was not assigned as error. Rather, Ryan claimed that his conviction was void or voidable because (1) the State "prepped" its witnesses, (2) the court dictated to defense counsel how to prepare defense strategy, (3) the court denied Ryan's motion to transfer his case to juvenile court, (4) Ryan's defense was not allowed to fully cross-examine the State's witnesses, (5) the trial court allowed Ryan to be tried jointly with his father, (6) Ryan's sentence was excessive, and (7) Ryan had ineffective assistance of trial counsel. The district court for Richardson County denied that motion after a hearing. Ryan did not appeal the denial of his second amended motion for postconviction relief.

On September 8, 1994, Ryan, represented by other, new counsel, filed in the district court for Richardson County a postconviction relief motion seeking vacation of his conviction and sentence. In that motion, Ryan focused solely on jury instruction No. 7 and alleged, in substance, that (1) the trial court improperly instructed the jury as to the elements required to be proved by the State in order to convict Ryan of second degree murder, (2) his court-appointed trial counsel was ineffective for failing to object to the trial court's instruction on second degree murder, and (3) his counsel on direct appeal was ineffective in failing to assign as error the trial court's erroneous

jury instruction on second degree murder.

After a hearing, the district court denied Ryan's postconviction relief motion, and Ryan timely appealed to this court.

## ASSIGNMENT OF ERROR

Ryan contends that the district court erred in denying his motion to vacate his conviction and sentence.

## ANALYSIS

### MALICE AS ELEMENT OF SECOND DEGREE MURDER

We have held that it is a fundamental principle of statutory construction that penal statutes are to be strictly construed, and it is not for the courts to supply missing words or sentences to make clear that which is indefinite, or to supply that which is not there. *State v. Salyers*, 239 Neb. 1002, 480 N.W.2d 173 (1992). However, the U.S. Supreme .Court has held that a state's highest court may, by authoritative interpretation, put words in a statute as if it had been so amended by the Legislature. See *Winters v. New York*, 333 U.S. 507, 68 S. Ct. 665, 92 L. Ed. 840 (1948). Although we construe penal statutes strictly, we give penal statutes a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served. *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987). Moreover, when a statute is susceptible of two constructions, under one of which the statute is unconstitutional or of doubtful validity, that construction which results in validity is to be adopted. *Id.* As a result, an overbroad statute should be construed so as to avoid any constitutional problems. *Id.* (citing *New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982)).

Without the element of malice or mens rea, Neb. Rev. Stat. § 28–304(1) (Reissue 1989), the second degree murder statute of which Ryan was convicted, would be of doubtful validity and perhaps unconstitutional. Through acceptable statutory construction principles, we have held and continue to hold that under § 28–304(1), malice is a necessary element of second degree murder. By such statutory construction, there can be no question of § 28–304(1)'s validity.

For over a century, Nebraska, by statute, defined second degree murder as the killing of another person purposely and maliciously, but without deliberation and premeditation. See, Gen. Stat. ch. 58, § 4 (1873); Neb. Rev. Stat. § 28-402 (Reissue 1975). In doing so, Nebraska followed the commonly held view in this country that malice is an essential element of murder in the second degree. See 40 C.J.S. *Homicide* §§ 64 and 65 (1991). Operative July 1, 1978, the Legislature adopted the current criminal code, which defined second degree murder as causing the death of a person intentionally, but without premeditation. See § 28-304(1) (Reissue 1989).

We first addressed the elements of second degree murder under the current criminal code in *State v. Clermont*, 204 Neb. 611, 284 N.W.2d 412 (1979). The crime in that case was committed July 22, 1978, 3 weeks after the amendment became effective. The defendant assigned as error that the evidence was insufficient to support the verdict of guilty of second degree murder. We affirmed the trial court, holding that there was sufficient and competent evidence to support the conviction. In the *Clermont* opinion of October 1979, we continued to hold that the essential elements in the crime of murder in the second degree are that the killing be done purposely and maliciously. In *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983), the defendant assigned as error insufficient evidence to support a second degree murder conviction. In affirming the conviction, we recognized the discrepancy between our previous holding in *Clermont* and the strict reading of § 28-304(1). This court construed § 28-304(1) to its most reasonable and valid construction by stating:

> Section 28-304(1) provides: "A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." In *State v. Clermont* . . . this court said: "The essential elements in the crime of murder in the second degree are that the killing be done *purposely and maliciously.*" We also said in *State v. Clermont* . . . "*The elements of malice and intent concern the state of mind of the slayer. Malice, in its legal sense, denotes that condition of mind which is manifested by intentionally doing a wrongful act without*

*just cause or excuse . . . ."*
(Emphasis supplied.) *State v. Rowe*, 214 Neb. at 689–90, 335 N.W.2d at 312–13.

Proper statutory construction of § 28–304(1) mandates that malice remain an element of second degree murder. As a general rule, statutes will not be understood as effecting any change in the common law beyond what is clearly indicated. *State v. Eagle Thunder*, 201 Neb. 206, 266 N.W.2d 755 (1978). Legislative silence as to a mental element in a crime already so well defined in common law and statutory interpretation is not to be construed as eliminating that element from the crime. See, *Morissette v. United States*, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952); *People v. McNeese*, 892 P.2d 304 (Colo. 1995).

In *Morissette v. United States*, the defendant was charged with stealing and converting property of the United States in violation of 18 U.S.C. § 641, which statute is silent as to felonious intent. The trial court, over Morissette's objection, did not instruct the jury on felonious intent. The U.S. Court of Appeals for the Sixth Circuit held that the trial court did not err in refusing to instruct the jury on intent, because the statutory offense did not require an element of criminal intent. The U.S. Supreme Court noted that the mental element of intent was longstanding and well defined in common law, and thus, the Court reversed the lower court and held that mere omission from § 641 of any mention of intent will not be construed as eliminating that element from the crimes denounced. The Court described the government's request for a strict statutory construction without reading the element of intent as follows:

> The Government asks us by a feat of construction radically to change the weights and balances in the scales of justice. The purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution's path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries. Such a manifest impairment of the immunities of the individual should not be extended to common–law crimes on judicial initiative.

342 U.S. at 263. Malice, like intent, is an element concerning the state of mind of the accused. *State v. Rowe, supra.* Malice, a material element of second degree murder dating back to the creation of the crime in the Nebraska Criminal Code, is a material element founded in statutory and common law. See *id.*

Legislative silence cannot do away with such a basic premise of what constitutes second degree murder. Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined as a matter of construction from the language of the act, in connection with its manifest purpose and design. Thus, a statute may be construed to include a criminal intent element absent from its face. *State v. Conner*, 292 N.W.2d 682 (Iowa 1980).

Due process of law requires that criminal statutes be clear and that ascertainable standards of guilt be defined with sufficient definiteness to inform those subject to the statute what conduct will render them liable to punishment. *State v. Saulsbury*, 243 Neb. 227, 498 N.W.2d 338 (1993). A construction resulting in unreasonableness as well as absurd consequences will be avoided. *State v. Conner, supra.*

In regard to § 28-304(1), we have held that when the express language of the statute does not make the elements of the crime clear, the express language of the statute is insufficient. See *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994).

A statute is unconstitutionally vague or overbroad if it proscribes legal as well as illegal conduct. See *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972). Mens rea should apply to each of the statutory elements which criminalize otherwise innocent conduct. See *U.S. v. X-Citement Video, Inc.*, ____ U.S. ____, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994). Malice is that condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse. *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994). Construing the legislative silence of § 28-304(1) as eliminating malice as a material element of second degree murder would result in the absurd consequence of an overbroad murder statute making certain legal acts illegal.

For example, law enforcement officials forced to kill in the line of duty cause the death of another person intentionally. The

law enforcement official, however, does not commit a wrongful act but acts with just cause. Similarly, the corrections employee or agent designated to carry out a criminal's sentence of death causes the death of another person intentionally. The prosecutor who successfully persuades a court to sentence a defendant to death causes the death of another person intentionally. Ordinarily, a court will not impose a death sentence unless a prosecutor has requested such sentence and has also adduced sufficient evidence to support the request. Even Nebraska's Board of Pardons, which includes Nebraska's Governor, Attorney General, and Secretary of State, causes the death of another person intentionally when the board's members turn down a reduction of sentence requested by an inmate who is awaiting execution. If malice is not read into § 28-304(1), these individuals carrying out state duties would be in violation of that statute unless the statute is properly construed.

If malice is not read into § 28-304(1), individuals who commit legal acts, though punishable under the statute, would have to defend themselves through an affirmative defense of justification. See Neb. Rev. Stat. § 28-1416 (Reissue 1989). This results in a shifting of the State's burden of proving every element of the crime charged in a criminal case. As a practical matter, the defendant would be forced to forego his or her presumption of innocence and be required to produce evidence that he or she in causing the death of a person acted lawfully. See *State v. Grimes, supra.* A person charged with a crime is entitled to a presumption of innocence and may insist that the State prove his guilt beyond a reasonable doubt. See *Herrera v. Collins,* 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993).

When the rules of proper statutory construction are applied to § 28-304(1), that statute, though silent as to the longstanding material element of malice, must be read to include malice as an element of second degree murder in order to preserve a defendant's right to his or her presumption of innocence.

As previously stated, the material elements of the crime of murder in the second degree are that the killing be done purposely and maliciously. These material elements are not new. Rather, they are over a century old and have always been the

material elements of second degree murder in Nebraska and remain the material elements of the crime after the adoption of the current criminal code. See, Gen. Stat. ch. 58, § 4 (1873); *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995); *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994); *State v. Franklin*, 241 Neb. 579, 489 N.W.2d 552 (1992); *State v. Illig*, 237 Neb. 598, 467 N.W.2d 375 (1991); *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988); *State v. Moniz*, 224 Neb. 198, 397 N.W.2d 37 (1986); *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983); *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980); *State v. Clermont*, 204 Neb. 611, 284 N.W.2d 412 (1979).

## JURY INSTRUCTION'S OMISSION OF MALICE AS MATERIAL ELEMENT

In the case at bar, the trial court instructed the jury that the material elements of murder in the second degree are that the killing be done intentionally, but without premeditation. Such a jury instruction does not correctly instruct the jury of the material elements of second degree murder because it omits that the killing must be done maliciously.

The trial court also instructed the jury that if the State proved beyond a reasonable doubt that Ryan killed intentionally, but without premeditation, *then the jury had a duty* to find Ryan guilty of second degree murder done purposely and *maliciously*. Although the trial court recognized that malice is an essential element of second degree murder, its instruction did not require the jury *to find* whether Ryan killed with malice. Rather, the instruction commanded that if the jury determined that Ryan killed intentionally, but without premeditation, then the jury had a duty to find that he acted purposely and maliciously. As worded, the jury instruction requires the jury to presume malice if it finds that the killing was done intentionally.

Also as worded, the jury instruction does not require the State to prove each material element of second degree murder beyond a reasonable doubt. By ordering the jury to presume that Ryan acted with malice, a material element of the crime of second degree murder, the instruction violated Ryan's 14th Amendment rights to due process. See, *Francis v. Franklin*, 471

U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). That violation was prejudicial to Ryan.

We have previously held that jury instructions which set forth only the statutory elements of a crime are insufficient when they do not set forth all the essential elements of the crime. *State v. Williams, supra*. We have also previously held that a jury instruction that fails to include malice as a material element of murder in the second degree is plain error and prejudicial. See, *State v. Williams, supra*; *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994). When the material element of malice is omitted from the second degree murder jury instruction, a defendant's conviction for second degree murder is constitutionally invalid and postconviction relief is proper to rectify the constitutionally invalid conviction. See, *State v. Lowe*, 248 Neb. 215, 533 N.W.2d 99 (1995); *State v. Plant*, 248 Neb. 52, 532 N.W.2d 619 (1995); *State v. Eggers*, 247 Neb. 989, 531 N.W.2d 231 (1995).

## PROCEDURAL DEFAULT

The State contends that Ryan's motion must be overruled because it is procedurally barred due to his prior direct appeal and his previous unsuccessful motion for postconviction relief which he did not appeal. As previously stated, however, the omission of malice as a material element to the crime of second degree murder is plain error and prejudicial. A judge's instructions to the jury as to the law and how the evidence should be assessed are crucial to a fair trial. They should guide the jury's deliberations and are not mere technicalities of our legal system. Errors in such matters may go to the heart of the question of guilt. See *Houston v. Dutton*, 50 F.3d 381 (6th Cir. 1995).

An appellate court is compelled to accept jurisdiction when the sentence entered by the trial court is invalid due to plain error in the proceedings. *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995). Moreover, the defendant's conviction was constitutionally infirm and, therefore, void ab initio. See, *State v. Rolling*, 218 Neb. 51, 352 N.W.2d 175 (1984); *State v.*

*Ewert*, 194 Neb. 203, 230 N.W.2d 609 (1975). A void sentence is no sentence. *State v. Wren*, 234 Neb. 291, 450 N.W.2d 684 (1990). It has been longstanding law in Nebraska that a void judgment may be attacked at any time in any proceeding. See *State v. Ewert, supra*. Thus, to use a procedural default or waiver as a means of ignoring a plain error that results in an unconstitutional incarceration would place form over substance; would damage the integrity, reputation, and fairness of the judicial process; and would render the plain error doctrine and postconviction relief remedies meaningless. *State v. Plant, supra*.

## HARMLESS ERROR ANALYSIS

The State, apparently laying aside that the burden is upon it to prove every element of the crime charged, argues that the erroneous jury instruction was harmless error because Ryan did not produce evidence to show a lack of malice. Ryan, however, did present evidence at trial that he was under "mind control" during the crime and " 'was not acting on his own free will.' " *State v. Ryan*, 226 Neb. 59, 72, 74, 409 N.W.2d 579, 588, 589 (1987).

The Due Process Clause of the 14th Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Francis v. Franklin, supra*.

In *Sandstrom v. Montana*, 442 U.S. 510, 512, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), the U.S. Supreme Court addressed whether, in a case in which intent is an element of the crime charged, the jury instruction, " 'the law presumes that a person intends the ordinary consequences of his voluntary acts,' " violates the 14th Amendment's requirement that the State prove *every* element of a criminal offense beyond a reasonable doubt. The Court held that the challenged jury instruction had the effect of relieving the State of the burden of proof on the critical question of petitioner's state of mind. *Id*. In *Sandstrom*, the Court stated:

> [A] conclusive presumption in this case would "conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every

element of the crime," and would "invade [the] factfinding function" which in a criminal case the law assigns solely to the jury. The instruction announced to David Sandstrom's jury may well have had exactly these consequences. Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and "ordinary consequences" of defendant's action), Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove "beyond a reasonable doubt . . . every fact necessary to constitute the crime . . . charged," [citation omitted], and defendant was deprived of his constitutional rights . . . .

442 U.S. at 523.

The Sixth Amendment provides in criminal prosecutions, such as in Ryan's case, the defendant's right to an impartial jury. This right to trial by jury is fundamental to the American scheme of justice and includes as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of guilt. See *Sparf and Hansen v. United States*, 156 U.S. 51, 15 S. Ct. 273, 39 L. Ed. 343 (1895). The Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is probably guilty, then leave it to the court to determine whether the defendant is guilty of all elements beyond a reasonable doubt. The jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). However clear the proof may be, or however incontrovertible may seem to the court to be the inference of a criminal intention, the question of intent can never be ruled as a question of law, but must always be submitted to the jury. *Morissette v. United States*, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 2d 288 (1952) (quoting Judge Andrews in *People v. Flack*, 125 N.Y. 324, 26 N.E. 267 (1891)). The same ruling is applicable to the element of malice in a second degree murder trial.

Assuming Ryan's jury could have ignored the instruction's command that the jury presume malice and found Ryan guilty because he acted with malice, we cannot be certain that this is in fact what the jury did do. See *Sandstrom v. Montana, supra.*

In *Rose v. Clark*, 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), the U.S. Supreme Court applied a harmless error analysis to a jury instruction that instructed the jury to presume malice if the State proved beyond a reasonable doubt that a killing had occurred. The "presumption" instruction stated:

> " 'All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the State has proven beyond a reasonable . . . doubt that a killing has occurred, then it is presumed that the killing was done maliciously. But this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the Defendant, or exists in the evidence of the State.' "

478 U.S. at 574.

The facts in *Rose v. Clark*, however, are significantly distinguishable from the case at bar. In *Rose v. Clark*, 478 U.S. at 574–75 n.2, the trial court also instructed the jury:

> "The question of whether the alleged killing was done with malice is for you to determine from the entire case, and you should look to all of the facts and circumstances developed by the evidence to determine whether the State has . . . proven beyond a reasonable doubt the existence of malice. If you have a reasonable doubt as to whether the alleged killing was done with malice, then the Defendant cannot be guilty of murder in the second degree and you must acquit him of that offense."

The Court determined that, based upon the record as a whole, the jury instruction to presume malice was not the kind of error that automatically required reversal of an otherwise valid conviction. *Rose v. Clark, supra.* The jury in Ryan's trial was not instructed that the State had to prove beyond a reasonable doubt that Ryan acted with malice. This is significant when considering that the Court further stated in *Rose v. Clark* that

when a jury is instructed to presume malice from predicate facts, it *still must find the existence of those facts beyond a reasonable doubt.*

In the trial of Ryan, the jury was not instructed that malice is a material element of the crime of second degree murder. The Ryan jury was never instructed to determine whether malice existed. The jury was never instructed to deliberate or consider whether Ryan acted with malice. The jury was instructed only that if it found that Ryan, either alone or while aiding and abetting another, did kill James Thimm on or about April 30, 1985, in Richardson County and did so intentionally, but without premeditation, then it had a duty to find Ryan guilty of murder in the second degree done purposely and maliciously. Clearly, the instruction ordered the jury to presume malice without considering it to be a material element of the crime. We presume that juries follow their instructions. See *Richardson v. Marsh*, 481 U.S. 200, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987). A reasonable juror in the Ryan trial would never consider the issue of malice and whether the State produced evidence to prove beyond a reasonable doubt that element of second degree murder, but would follow the court's instruction to find that Ryan acted maliciously if he acted intentionally but without premeditation.

An erroneous presumption on a disputed element of the crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon the evidence. If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is simply irrelevant. *Connecticut v. Johnson*, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983). In Ryan's case, the record conclusively shows that Ryan was convicted of second degree murder without the jury having to find that the State proved beyond a reasonable doubt a material element of the crime of second degree murder, malice. Such an error deprived Ryan of a constitutional right so basic to a fair trial that the infraction can never be treated as harmless error. See, *id.*; *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

### Affirmative Defense of Insanity

We do note that the court instructed the Ryan jury as to the affirmative defense of insanity in jury instruction No. 7A. The jury was instructed to find Ryan not responsible by reason of insanity if Ryan proved by a preponderance of the evidence that he did not have the mental capacity to understand the nature and quality of his act, or to distinguish between right and wrong with respect to it, or to know that such act was wrong and deserved punishment.

In *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), the U.S. Supreme Court addressed the constitutionality of burdening a defendant in a New York second degree murder trial with proving the affirmative defense of extreme emotional disturbance as defined by New York law. The *Patterson* Court held that once the facts constituting a crime are established beyond a reasonable doubt, based on all the evidence *including the evidence of the defendant's mental state*, a criminal statute may mandate that the defendant prove the affirmative defense . . . by a preponderance of the evidence. The Court further stated:

> We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt *all* of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here.

(Emphasis supplied.) 432 U.S. at 210.

In so holding, the Court distinguished *Patterson* from *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). In *Mullaney*, 421 U.S. at 684, the court addressed whether a Maine statute requiring a defendant charged with murder to prove that he acted " 'in the heat of passion on sudden provocation' " in order to reduce the homicide charge to manslaughter comported with the due process requirement to prove beyond a reasonable doubt every

fact necessary to constitute the crime charged. The trial court instructed the jury that " 'malice aforethought is an essential and indispensable element of the crime of murder,' " without which the homicide would be manslaughter. 421 U.S. at 686. The jury was further instructed, however, that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation. The defendant successfully petitioned in federal court for a writ of habeas corpus to set aside his murder conviction. In granting habeas corpus relief, the federal court held that the prosecution must prove malice beyond a reasonable doubt. The Supreme Court, in affirming the federal court's grant of habeas corpus relief, held that the result in a case where the defendant is required to prove the critical fact in dispute, is to increase further the likelihood of an erroneous murder conviction. The Court further stated:

> Maine law requires a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. Under this burden of proof a defendant can be given a life sentence when the evidence indicates that it is *as likely as not* that he deserves a significantly lesser sentence. This is an intolerable result in a society where, to paraphrase Mr. Justice Harlan, it is far worse to sentence one guilty only of manslaughter as a murderer than to sentence a murderer for the lesser crime of manslaughter.

421 U.S. at 703–04.

The *Patterson* Court found that *Mullaney* was distinguishable because in *Mullaney* the defendant was required to prove an element of the crime, whereas in *Patterson*, extreme emotional disturbance was not a part of the definition of the crime.

Thus, while a defendant may be required to prove by a preponderance of the evidence an affirmative defense, a defendant may not be required to assume the burden of disproving the existence of an essential element of a crime.

Malice is an essential element of the crime of second degree murder, and the absence of malice is not an affirmative defense. The State must prove every ingredient of an offense beyond a reasonable doubt, and it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause. *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). See, *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993); *Martin v. Ohio*, 480 U.S. 228, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987).

Accordingly, the State may not constitutionally rely upon the affirmative defense of insanity as a means of addressing the material element of malice in a trial for second degree murder because it relieves the State from proving beyond a reasonable doubt the defendant's guilt of each and every essential element of the crime, particularly malice.

Due process in a trial of a criminal case prohibits a jury instruction which contradicts the presumption of a defendant's innocence or shifts to a defendant the burden of persuasion on an element of the crime charged. See, *State v. Parks*, 245 Neb. 205, 511 N.W.2d 774 (1994); *State v. Gatson*, 244 Neb. 231, 505 N.W.2d 696 (1993); *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991). Thus, the affirmative defense instruction cannot cure the court's failure to instruct the jury to find whether the State proved beyond a reasonable doubt each element of the crime charged.

A basic foundation of our criminal justice system is that the accused is presumed innocent and the State must prove beyond a reasonable doubt each element of the crime charged. The record reflects that Ryan, charged with a horrific crime, was not accorded the presumption of innocence. The State was not required to prove beyond a reasonable doubt each element of the crime with which Ryan was convicted and for which a life sentence was imposed. We cannot ignore or excuse a trial error that strikes at the foundation of our criminal justice system and which was prejudicial to Ryan.

## CONCLUSION

As a result of the prejudicial jury instructions, Ryan's trial was rendered fundamentally unfair in violation of the U.S. and Nebraska Constitutions. We must and do reverse the postconviction relief judgment of the district court and remand the cause to that court with direction to vacate its postconviction relief judgment and grant Ryan a new trial on the second degree murder charge.

REVERSED AND REMANDED WITH DIRECTION.

FAHRNBRUCH, J., concurring.

Although I vote for the majority opinion, I, nevertheless, write separately to address some issues raised by the dissenting opinions.

The dissenters correctly contend that there are only statutory crimes. Even so, the elements of statutory crimes are interpreted by common law. One dissenter acknowledges this by stating: "Because there are no common–law crimes in this state, we must resort to only common–law definitions where general terms are used to designate crime."

The majority does not chart new ground by finding a common–law element in a statutory crime. We have required the State to prove beyond a reasonable doubt the common–law element of "without consent" in order to convict a defendant of the crime of robbery under Neb. Rev. Stat. § 28–414 (Reissue 1964). See *State v. McClarity*, 180 Neb. 246, 249, 142 N.W.2d 152, 154 (1966). One dissenter relies on false imprisonment as an example of where we do not read into the statutory crime necessary elements in order to avoid construing a lawful arrest as false imprisonment. However, we define false imprisonment as the unlawful restraint of a person without his consent either with or without process of law. *Grebe v. State*, 113 Neb. 327, 202 N.W. 909 (1925). The statutory definition of false imprisonment does not contain the terms "unlawful" or "without consent." See Neb. Rev. Stat. §§ 28–314 and 28–315 (Reissue 1989). This court, however, necessarily reads the terms into the statutory crime of false imprisonment.

As to second degree murder, this court has long recognized "malice" as a material element of the crime. Thus, we did not add an element by "judicial fiat." Rather, the majority has held

that legislative silence as to a long–held material element of a crime did not, in fact, eliminate that material element from the crime.

The dissenters look to the State of Washington's Supreme Court for guidance on how Nebraska's second degree murder should be construed. Assuming the opinion is relevant to Nebraska law, *State v. McCullum*, 98 Wash. 2d. 484, 656 P.2d 1064 (1983), is not persuasive. In *State v. McCullum*, the appellant claimed that the jury instruction as to his affirmative defense of self–defense improperly placed the burden of proof upon the defendant. The Washington Supreme Court agreed with the appellant and held that because the legislature had not clearly imposed the burden of proving self–defense on criminal defendants, the obligation to prove the absence of self–defense remained with the prosecution. It is important to realize that *State v. McCullum* is an affirmative defense case and not a statutory construction case.

It is true that *State v. McCullum* mentions that the former Washington first degree murder statute which provided that "a killing was murder or manslaughter, unless it was 'excusable or justifiable,' " was amended to omit the " 'excusable or justifiable' " language. 98 Wash. 2d at 491, 656 P.2d at 1069. The Washington Supreme Court accepted the plain language of the statute. The plain language of the amended statute, however, did not omit an essential element, because the State of Washington defines "intent" as acting " 'with the objective or purpose to accomplish a result which constitutes a crime.' " 98 Wash. 2d at 495, 656 P.2d at 1071. The Washington Supreme Court held that, given the Washington statutory definition of intent, a person acting in self–defense cannot be acting intentionally as defined by Washington statutes.

Nebraska does not, however, follow Washington statutory law. In Nebraska, intent is acting willfully or purposely and not accidentally or involuntarily. See *State v. Coca*, 216 Neb. 76, 341 N.W.2d 606 (1983). The Nebraska definition of intent does not resolve the ambiguities left by the silent omission of the element of malice in the printed language of Neb. Rev. Stat. § 28–304 (Reissue 1989). Therefore, the Washington Supreme Court case is significantly distinguishable and not applicable to

the reasons why we have continuously held that malice is an essential element of § 28-304.

One of the dissenters contends that Ryan's jury "was instructed that they must find that Ryan acted with the requisite *criminal intent* as a material element of the crime." I do not agree that such instruction overcomes the omission of malice as an essential element of second degree murder. Jury instruction No. 11, referred to by the dissenter, does not define "criminal intent." Rather, that instruction instructs the jury to determine whether Ryan had the requisite "criminal intent" *as required by jury instruction No. 7.* Jury instruction No. 7 instructed the jury that among the material elements that the State must prove beyond a reasonable doubt is that Ryan did kill "intentionally, but without premeditation." Jury instruction No. 10 defined "intentionally" as "willfully or purposely and not accidentally or involuntary." As stated earlier, that definition of "intentionally" does not resolve the ambiguities left by the silent omission of the element of malice in the printed language of § 28-304.

The majority opinion states that "[i]f malice is not read into § 28-304(1), individuals who commit legal acts, though punishable under the statute, would have to defend themselves through an affirmative defense of justification." The dissenters claim that the public officials need merely raise that they are statutorily protected. The dissenters also argue that it is not constitutionally infirm to require defendants to bear a burden of production. The dissenters' analysis, however, places upon the defendant the burden of adducing evidence to prove the absence of a material element of a crime. To ignore the statute's overbreadth by requiring the defendant to raise, for the first time before the jury, the absence of a material element of a crime as an affirmative defense would not accord the defendant the presumption of innocence which is a basic foundation of our criminal justice system. It must be remembered that the burden is upon the State to prove beyond a reasonable doubt each essential element of a crime and that the burden never shifts. See *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

One of the dissenters states: "[E]ach and every statute in a criminal code ought to be construed to reach only criminal conduct, that is, conduct which is unlawful, unjustified, or inexcusable." This is exactly the reason that this court has construed § 28–304 to include the element of malice—so that the criminal conduct of second degree murder is unlawful and without just cause or excuse. Furthermore, as articulated in the majority opinion, malice is an element which a jury, before convicting a defendant, must find that the State proved beyond a reasonable doubt. An appellate court cannot in lieu of the jury determine whether the State proved an essential element of a crime when the jury did not even address whether the State proved beyond a reasonable doubt that essential element.

Finally, a dissenter argues that justice is not served by the majority's holding. The evidence indeed may be overwhelming that Ryan acted with malice. However, a jury must make that determination, not a trial court, unless a jury is waived. In a case such as Ryan's, an appellate court can only review the case to assure that a defendant was given all the rights to which that defendant was entitled at trial. In *Henderson v. Morgan*, 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976), the U.S. Supreme Court addressed whether a defendant may enter a voluntary plea of guilty to a charge of second degree murder without being informed that intent to cause the death of his victim was an element of the offense. The Court assumed that the prosecutor had overwhelming evidence of guilt available. Nevertheless, the Court held that the guilty plea was not voluntary in a constitutional sense and that, in fact, the charge of second degree murder was never formally made because the defendant was not advised of an essential element of the crime. The Court further stated that nothing in the trial court record could serve as a substitute for either a finding after trial, or a voluntary admission, that the defendant had the requisite intent. See *id*.

It would be well to recall the words of Justice Oliver Wendell Holmes, Jr., who, in referring to the U.S. Supreme Court, stated that "[t]his is a court of law . . . not a court of justice." The majority opinion is in tune with the U.S. and Nebraska Constitutions in requiring the State to prove to a jury, beyond a

reasonable doubt, that a defendant is guilty of each and every element of the crime charged. Ryan, charged with second degree murder, was convicted by a jury that was not instructed upon or required to address whether the State proved beyond a reasonable doubt the essential element of malice. The Constitutions and the laws of the United States and Nebraska require that Ryan's conviction of second degree murder be overturned and that he be granted a new trial.

One of the fundamental reasons that courts exist is to protect a citizen from the arbitrary acts of government. Every defendant, regardless of the brutality of his or her criminal act, is entitled to the presumption of innocence until a jury finds the defendant guilty of each and every element of the crime charged. Therefore, any holding, other than the holding reached by the majority opinion, would deprive Ryan of a fair and full criminal jury trial, which is guaranteed to all defendants under the U.S. and Nebraska Constitutions.

GERRARD, J., dissenting.

Because this court holds, as a matter of law, that the jury instructions given in Ryan's trial violated his rights under the U.S. and Nebraska Constitutions, I am compelled to dissent and write separately.

It is obvious that the Legislature, in revising the Nebraska Criminal Code in 1977, intended to remove malice, the lack of just cause or excuse, as an element of second degree murder. As a corollary to that revision, the Legislature had previously set forth a procedure in the criminal code whereby a defendant could raise justification or excuse as an affirmative defense in cases where the facts warrant such a defense. For the reasons that follow, I do not agree with the majority's assertion that the legislative act, which affirmatively removed malice as an element of second degree murder, creates "the absurd consequence of an overbroad murder statute making certain legal acts illegal."

Furthermore, requiring a defendant to raise the issue of justification or excuse as defined by our statutes, Neb. Rev. Stat. §§ 28–1406 through 28–1416 (Reissue 1989), does not unconstitutionally shift the State's burden of proving every

element of the crime charged in a criminal case.

Finally, even if Ryan were due a jury instruction explicitly stating that the jury needed to find Ryan acted with malice, on the facts in this case, not receiving such an instruction was clearly harmless error.

## I. MALICE AS ELEMENT OF
## SECOND DEGREE MURDER

The majority opinion asserts that without the element of malice or mens rea, the second degree murder statute of which Ryan was convicted would be of doubtful validity and, perhaps, unconstitutional. I take exception with this underlying proposition, set forth by the majority, for several reasons.

### 1. STATUTORY CONSTRUCTION

Neb. Rev. Stat. § 28-304(1) (Reissue 1989) defines second degree murder as "caus[ing] the death of a person intentionally, but without premeditation." Malice is the intentional doing of a wrongful act without just cause or excuse. *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994).

The meaning of the word "malice" added to the statutory text of § 28-304(1) adds nothing to the statutory definition of second degree murder which would not exist through the use of well-established principles of statutory construction. Although a penal statute must be strictly construed, it is to be given a sensible construction, and general terms are to be limited in their construction and application so as to avoid injustice, oppression, or an absurd consequence. *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994). Where the language of a statute is plain and unambiguous, no interpretation is needed, and a court is without authority to change such language. *Id.*

### (a) Presumption That Legislature Knows the Law

There are no common-law crimes in Nebraska. *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989); *State v. Douglas*, 222 Neb. 833, 388 N.W.2d 801 (1986); *Kinnan v. State*, 86 Neb. 234, 125 N.W. 594 (1910). Within constitutional boundaries, the Legislature is empowered to define a crime. *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989), *overruled on other grounds, State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994).

In construing a penal statute, a court cannot supply language which is absent from the statutory definition for a criminal offense. *State v. Schaaf, supra*. Because there are no common-law crimes in this state, we must resort to only common-law definitions where general terms are used to designate crime. *State v. Hauck*, 190 Neb. 534, 209 N.W.2d 580 (1973); *State v. Coomes*, 170 Neb. 298, 102 N.W.2d 454 (1960).

The Legislature is presumed to have known the preexisting law, and in enacting an amendatory statute, we are compelled to conclude that the language was intentionally changed for the purpose of effecting a change in the law itself. *State v. Suhr*, 207 Neb. 553, 300 N.W.2d 25 (1980).

### (b) Revisions to Criminal Code

Nebraska, like many other states, made significant revisions to its criminal code beginning in the early 1970's. In 1972, L.B. 8, a proposed complete revision of the Nebraska Criminal Code, first came before the Judiciary Committee. In 1977, after much study and debate, the Legislature passed 1977 Neb. Laws, L.B. 38, the framework for what is now the Nebraska Criminal Code. The only change effected by the 1977 criminal code revision on our homicide statutes was to remove from our former second degree murder statute the requirement that second degree murder is a killing done "purposely and maliciously, but without deliberation and premeditation," replacing it with the requirement that murder in the second degree is causing the death of another person "intentionally, but without premeditation." Compare Neb. Rev. Stat. § 28-402 (Reissue 1975) with § 28-304. In contrast, the 1977 revision of the criminal code left undisturbed the requirement that malice is an element of first degree murder. Compare Neb. Rev. Stat. § 28-401 (Reissue 1975) with Neb. Rev. Stat. § 28-303 (Reissue 1989). In addition, the revised manslaughter statute continued to specifically require that manslaughter is a killing done without malice. Compare Neb. Rev. Stat. § 28-403 (Reissue 1975) with Neb. Rev. Stat. § 28-305 (Reissue 1989).

Thus, it is clear that the Legislature, in the 1977 revision of the criminal code, contrary to the majority's assertion, was not

silent as to whether malice remained an element of second degree murder. By removing malice from the statutory text of only the second degree murder statute, the Legislature acted affirmatively with the intention of changing only the second degree murder statute and eliminating malice as an element of that particular crime. The effect of this change can only be examined within the context of the entire criminal code.

In 1969, the Legislature enacted Nebraska's first justification statute, the "Nebraska Self-Defense Act," Neb. Rev. Stat. § 29-114 (Cum. Supp. 1969). *State v. Goodseal*, 186 Neb. 359, 365, 183 N.W.2d 258, 262 (1971). Prior to that time, self-defense and other justification defenses in homicide cases were defined by the common law in this state. This court declared § 29-114 unconstitutional in *State v. Goodseal, supra.* In response, the Legislature immediately drafted what was then the justification statutes from the Model Penal Code into 1971 Neb. Laws, L.B. 895. Judiciary Committee Hearing, L.B. 895, 82d Leg., 1st Sess. 1-6 (April 13, 1971). This bill became law in 1972 and is currently codified at §§ 28-1406 through 28-1416.

The effect of this legislation was to change self-defense and other justifications or excuses for the use of deadly force from common-law defenses to statutorily defined affirmative defenses. See § 28-1416(1). The nature of an affirmative defense is such that the defendant has the initial burden of going forward with evidence of the defense. When the defendant has produced sufficient evidence to raise the defense, the issue is then one which the State must disprove beyond a reasonable doubt. See, *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253 (1993); *State v. Connely*, 243 Neb. 319, 499 N.W.2d 65 (1993).

As a practical matter, the evidence necessary to raise an affirmative defense may be adduced either by the defendant's witnesses or in the State's case in chief without the necessity of the defendant presenting evidence. A defendant is not required to plead and give notice of an affirmative defense of justification or self-defense. *State v. Clayburn*, 223 Neb. 333, 389 N.W.2d 314 (1986). The defendant need only adduce more than a scintilla of evidence to satisfy this initial burden. *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992).

In this context, the effect of the legislative act, which affirmatively removed malice as an element of second degree murder within a short time after the Legislature statutorily defined justification defenses, was to relieve the prosecution of an unnecessary burden in those cases where justification or self-defense was not at issue. In other words, Nebraska law intended to treat an accused who intentionally, but without premeditation, killed another as one guilty of second degree murder unless and until the accused raised the issue of just cause or excuse. Once the accused raises the issue of justification, then the burden is on the State to disprove beyond a reasonable doubt the existence of justification for the use of deadly force.

Instructive on this issue is *State v. McCullum*, 98 Wash. 2d 484, 656 P.2d 1064 (1983). The State of Washington adopted revisions to its criminal code and, in particular, its homicide statutes in 1975. In *McCullum*, the defendant claimed the trial court's jury instruction unconstitutionally shifted the burden of proof concerning his claim of self-defense. In analyzing the statutory allocation of burden of proof as to self-defense, the Washington Supreme Court first found that under their former criminal code, the state had the burden of proving, beyond a reasonable doubt, the absence of self-defense in a murder prosecution. Washington's former first degree murder statute included the provision that a killing was murder unless it was justifiable or excusable. This language was removed by the Washington Legislature in 1975. In addition, the legislature made self-defense an affirmative defense to homicide in the 1975 revisions to Washington's criminal code.

The court in *McCullum* reasoned that when the legislature removed the language, "unless it was 'excusable or justifiable' " from Washington's former murder statute, it did not relieve the state of its burden to prove, beyond a reasonable doubt, that a killing was without justification or excuse, when at the same time the legislature made self-defense an affirmative defense without allocating a burden of proof to the defendant. *Id*. at 491, 656 P.2d at 1069.

As a matter of statutory construction, the Washington court presumed that the legislature did not engage in a meaningless

act by removing the language of justification or excuse from the former murder statute. Thus, the court concluded that with these changes in the criminal code, the legislature intended to relieve the prosecution of the necessity of pleading the absence of self–defense.

> [T]he Legislature merely relieved the State of the time–consuming and unnecessary task of alleging and proving negative propositions which may not be involved in each case. Once the issue of self–defense is properly raised, however, the absence of self–defense becomes another element of the offense which the State must prove beyond a reasonable doubt.

*Id*. at 493–94, 656 P.2d at 1070.

I find the reasoning of the Washington Supreme Court to be persuasive in the instant case. It seems clear that the Nebraska Legislature, in amending our second degree murder statute, intended to remove the words "purposely" and "maliciously" and, instead, define second degree murder as intentionally (as that word must be understood within the context of the criminal code) causing the death of another, without premeditation.

Moreover, the Legislature, by making justification or excuse for the use of force a *statutory* defense, intended to treat any intentional killing as unlawful unless the defendant, by any means possible, raised the issue of justification or excuse. If any effect is to be given the legislative act of removing malice from Nebraska's second degree murder statute, it must be that, as in Washington, the Legislature intended to relieve the prosecution of the burden of pleading and proving the lack of justification or excuse when the defendant has not first raised the issue.

### (c) § 28–304(1) Is Not Unconstitutionally Overbroad

A series or collection of statutes pertaining to a certain subject matter, statutory components of acts which are in pari materia, may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible. *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994).

The majority asserts that malice must be inserted as a material element of second degree murder to avoid "the absurd

consequence of an overbroad murder statute making certain legal acts illegal." In support, the majority claims law enforcement officers forced to kill in the line of duty, prosecutors who successfully persuade a court to sentence a convicted murderer to death, the executioner who carries out any such sentence, and members of the Nebraska Board of Pardons could possibly be charged with second degree murder when performing their respective governmental duties.

However, the mere fact that one is a public officer raises the issue of justification for the use of deadly force. Nebraska's homicide statutes and justification for the use of force statutes must be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of our criminal code are consistent, harmonious, and sensible.

Thus, even though a public officer may intentionally, but without premeditation, take the life of another, the operation of § 28-1408, justification for the use of force in execution of a public duty, would require that, merely because an individual is a public officer, the State must prove, beyond a reasonable doubt, that such public officer was acting outside his or her duties or functions or outside the judgment or order of a competent court or tribunal. Clearly, police officers, corrections officials, members of the Nebraska Board of Pardons, and, for that matter, judges who sentence first degree murderers to death and Supreme Court justices who set execution dates, do not need malice inserted into the second degree murder statute to protect them in carrying out their public function.

It is axiomatic that a criminal code is only intended to proscribe criminal conduct. Thus, each and every statute in a criminal code ought to be construed to reach only criminal conduct, that is, conduct which is unlawful, unjustified, or inexcusable. The necessary corollary to this axiom is that when a criminal statute proscribes intentional conduct, it can only mean that the statute proscribes intentional conduct which is unlawful, unjustified, or inexcusable, in other words, intentional conduct done with a criminal intent:

This is precisely the manner in which the Legislature has directed the courts to construe the criminal code. Neb. Rev.

Stat. § 28–102 (Reissue 1989) delineates the purposes and principles of construction for the criminal code. It states, "The general purposes of the provisions governing the definition of offenses are: (1) To forbid and prevent conduct that *unjustifiably and inexcusably* inflicts or threatens substantial harm to individual or public interests . . . ." (Emphasis supplied.) Thus, the criminal code is only meant to reach intentional conduct, done with a criminal intent, that is not justified or excused by the statutory defenses contained in the criminal code.

Furthermore, the jury in this case was instructed that it must find that Ryan acted with the requisite *criminal intent* as a material element of the crime, not some abstract or undefined intent. Instruction No. 11 stated, in pertinent part:

> Intent or purpose is a mental process and it therefore generally remains hidden within the mind where it is conceived. . . . It may, however, be inferred from the words and acts of each defendant and from the facts and circumstances surrounding his conduct. . . . It is for you to determine from all of the facts and circumstances in evidence whether or not each defendant had the *criminal intent or purpose required* by [the] Instruction[s] [concerning either first degree murder, second degree murder, or manslaughter]. If you have any reasonable doubt with respect to either, with regard to a defendant, you must find the defendant not guilty of murder in the first degree or the lesser included offense of murder in the second degree; remembering that you must consider the guilt or innocence of each defendant individually.

(Emphasis supplied.) Accordingly, contrary to the majority's assertion, the jury was informed that it is only criminal intentional conduct which can support a guilty verdict and that if it was to find Ryan guilty, it must find the existence of criminal intent with respect to Ryan's conduct beyond a reasonable doubt.

Thus, taken in its proper statutory context, § 28–304(1) can only mean that second degree murder is intentionally, meaning with the requisite criminal intent, but without premeditation, causing the death of another—unless such intentional act is justified or excused under §§ 28–1406 through 28–1416. It is

incumbent upon the defendant to raise a justification defense if such a defense exists in a case, and it is not necessary for this court to judicially add the element of malice to the second degree murder statute after the Legislature revised the criminal code in the 1970's.

Furthermore, there is a practical problem if the majority's position on overbreadth is taken to its logical conclusion. If the second degree murder statute is overbroad without judicially supplying the element of malice, then there are many other statutes in our criminal code which may also be constitutionally suspect unless an additional "mens rea" element is judicially added to the statutory definition of those crimes.

For example, Neb. Rev. Stat. § 28–308(1) (Reissue 1989) states, "A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person." Thus, without limiting the conduct causing serious bodily injury to only that intentional or knowing conduct which *maliciously* (meaning without just cause or excuse) causes serious bodily injury, the statute proscribing first degree assault is potentially as overbroad as the second degree murder statute.

The first degree assault statute is just one of many statutes in the criminal code which, like second degree murder, proscribe intentional conduct that is harmful to other persons without the necessity of including malice in its statutory definition. It is my contention that when the intentional conduct criminal statutes are construed in light of § 28–102 and the justification statutes, a court is not compelled to add malice as a necessary element of such crimes in order to withstand a constitutional overbreadth challenge. To construe the intentional conduct statutes otherwise would surely lead to absurd consequences.

### 2. Shifting of Burden of Production Is Not Unconstitutional

The majority also asserts:

> If malice is not read into § 28–304(1), individuals who commit legal acts, though punishable under the statute, would have to defend themselves through an affirmative defense of justification. . . . This results in a shifting of

the State's burden of proving every element of the crime charged in a criminal case.

Contrary to the majority's assertion, there is nothing in the plain language of our justification for the use of force statutes which evinces a legislative intent to shift the ultimate burden of proof concerning the lack of justification or excuse away from the State. Moreover, neither the legislative history of Nebraska's justification statutes nor our case law construing the justification statutes, supports the majority's position that the justification statutory scheme relieves the State of its burden of proving beyond a reasonable doubt the lack of justification or excuse when raised by a defendant.

As stated previously, Nebraska's justification for the use of force statutes is taken directly from the Model Penal Code. Comments to article 3 of the Model Penal Code state, concerning an affirmative defense, that "the prosecution can be silent on the question of justification unless and until evidence is adduced (typically by the defendant) in support of the defense." Model Penal Code § 3.01, comment at 6 (1985).

Further support can be found in the Model Penal Code section concerning affirmative defenses in general. For defenses "denominated affirmative by the Code or another statute, or involving a matter of justification 'peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence,' the state's burden does not arise unless there is some evidence supporting the defense." Model Penal Code § 1.12, explanatory note at 187 (1985).

More importantly, several U.S. Supreme Court cases do not support the majority's contention that requiring a defendant to raise justification as an affirmative defense is an unconstitutional shifting of the State's burden of proof. In *Patterson v. New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), a case in which the defendant was convicted of second degree murder for the shooting death of a neighbor, the Supreme Court stated that "[p]roof of the nonexistence of all affirmative defenses has never "been constitutionally required . . . ." It is only the burden of persuasion concerning an element of the crime which remains with the State at all times, not necessarily the burden of

production. *Patterson v. New York, supra.*

In addition, in *Martin v. Ohio*, 480 U.S. 228, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987), the Court held an Ohio statute constitutional which, in fact, shifted the burden of persuasion and required a defendant to prove by a preponderance of the evidence the existence of self–defense in a murder case. The Court found that under the Ohio statutory scheme, such an allocation would not relieve the state of its burden, to prove the elements of the crime beyond a reasonable doubt. *Martin v. Ohio, supra.*

Even Justice Lewis Powell's dissents in *Patterson* and *Martin* clearly acknowledge that it is the *burden of persuasion* that the state is required to bear beyond a reasonable doubt under the holdings of *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 508 (1975), not the burden of production. Thus, concerning this particular issue, there is unanimity of opinion on the U.S. Supreme Court.

There is a clear constitutional distinction between casting the burden of *production* on an accused and casting the burden of *persuasion* on an accused. In discussing affirmative defenses, LaFave and Scott write:

> As to the burden of production of evidence, it is uniformly held that the defendant is obliged to start matters off by putting in some evidence in support of his defense—e.g., evidence of his insanity, or of his acting in self–defense, or of one of the other affirmative defenses—unless of course the prosecution, in presenting its own side of the case, puts in some evidence of a defense, in which case the matter of defense is properly an issue though the defendant himself produces nothing further to support it. Experience shows that most people who commit crimes are sane and conscious; they are not compelled to commit them; and they are not so intoxicated that they cannot entertain the states of mind which their crimes may require. Thus it makes good sense to say that if any of these unusual features are to be injected into the case, the defendant is the one to do it; it would not be sensible to make the prosecution in all cases prove the defendant's

> sanity, sobriety and freedom from compulsion. . . .
> Nothing in *Mullaney* or *Patterson* casts any doubt upon the
> constitutionality of so allocating the burden of production.

1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 1.8(c) at 72 (1986).

Therefore, the fact that the State of Nebraska requires an accused to raise the issue of justification neither relieves the State of proving guilt beyond a reasonable doubt of every element of a crime, nor does the requirement force the defendant to forgo the presumption of innocence in violation of his rights under the U.S. and Nebraska Constitutions.

## II. HARMLESS ERROR ANALYSIS

The jury instruction for second degree murder given in this case informed the jurors that if they find the State proved, beyond a reasonable doubt, that while in Richardson County, Ryan, either alone or while aiding and abetting another, intentionally, but without premeditation, killed Thimm, then they must find Ryan guilty of second degree murder done purposely and maliciously, but without deliberation and premeditation.

The majority asserts this instruction created a mandatory presumption requiring the jury to find Ryan acted with malice, that is, without just cause or excuse, upon finding Ryan acted intentionally, but without premeditation in killing Thimm. Thus, the majority concludes the instruction as given relieved the State of its burden to prove beyond a reasonable doubt each element of the crime charged, to wit: proof of malice, meaning proof of the lack of just cause or excuse. Moreover, the majority contends that this error was not harmless beyond a reasonable doubt because in addition to not being instructed that malice is an element of second degree murder, the jurors were also not instructed to find beyond a reasonable doubt the existence of the facts which give rise to the presumption of malice.

"Mandatory presumptions must be measured against the standards of *Winship* as elucidated in *Sandstrom*. Such presumptions violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense." *Francis v. Franklin*, 471 U.S. 307, 314, 105 S. Ct. 1965, 85 L.

Ed. 2d 344 (1985). Thus, the issue for our consideration is not whether the instruction as given created a mandatory presumption, but, rather, whether the instruction relieved the State of the burden of persuasion on an element of the offense of second degree murder. An analysis of the facts reveals that the jury instruction did not relieve the State of the burden of persuasion on an element of the offense of second degree murder.

The majority's position is that to sustain Ryan's conviction, the State was obligated to prove, beyond a reasonable doubt, Ryan intentionally and with malice, but without premeditation, killed Thimm. The jury's guilty verdict necessarily found the following: (1) Beyond a reasonable doubt, Ryan acted intentionally in causing Thimm's death; (2) beyond a reasonable doubt, Ryan did not premeditate his intentional act which caused Thimm's death; and (3) Ryan did not prove by a preponderance of the evidence that he was insane at the time he killed Thimm and was, therefore, excused. Thus, the only remaining element that a majority of this court would require the State to prove is that Ryan acted maliciously, that is, without just cause or excuse in killing Thimm.

At trial, Ryan never raised the issue of justification or excuse as a defense to his participation in the brutal killing of Thimm. Instead, Ryan chose to defend by claiming he was not guilty by reason of insanity. Ryan presented evidence at trial, in the context of an insanity defense, that he was under the mind control of his father and the religious cult at the Rulo farm and, thus, " 'was not acting on his own free will.' " *State v. Ryan*, 226 Neb. 59, 72, 409 N.W.2d 579, 588 (1987). The jury was properly instructed on the insanity defense. This defense is wholly inconsistent with the justification or excuse defenses set forth in §§ 28-1406 through 28-1416. It was Ryan's burden to prove his insanity at the time of the murder by a preponderance of the evidence. See Neb. Rev. Stat. § 29-2203 (Reissue 1989). The jury did not accept Ryan's claim of insanity at the time of his trial.

In Nebraska, for a defendant to claim insanity as a defense, he or she would necessarily assert either that he or she does not have the capacity to understand the nature of the act alleged to

be criminal or that he or she does not have the ability to distinguish between right and wrong with respect to such act. *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993). Ryan made these very claims at trial. It is logically impossible for a defendant to claim on one hand that he did not understand the nature of his act and, at the same time, claim he understood his act to be justified under the circumstances. Claiming an act is justified necessarily means one understands the nature of the act performed. In addition, if one is unable to distinguish whether an act is right or wrong, then one cannot claim his act was, in fact, right and thus justified or excused by law.

Justification was never at issue in Ryan's case. As is true with every insanity plea, Ryan's reliance on the insanity defense necessarily admitted the fact of the killing. The insanity defense merely acts to completely absolve a defendant of criminal culpability if he did not appreciate the wrongfulness of his conduct or that he was unable to distinguish between right or wrong. Peter Arenella, *Reflections on Current Proposals to Abolish or Reform the Insanity Defense*, 8 Am. J.L. & Med. 271 (1982).

Therefore, even if the jury instruction required the jury to presume the lack of justification, this instruction did not relieve the State of its burden of proving every element of the crime. Justification, as defined by statute, was not an issue in this case. For that reason alone, the error, if any, is harmless beyond a reasonable doubt.

Further, in *Rose v. Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), the Supreme Court held a harmless error analysis was applicable to an "erroneous malice instruction" in a Tennessee murder case. Significantly, as in the instant case, the accused in *Rose* defended on the ground that he was either insane or incapable of forming the requisite intent to kill the victims. The defendant had an opportunity to present evidence and argue in support of his innocence, he was tried by an impartial jury and supervised by an impartial judge, and, aside from the malice instruction, the jury was clearly instructed that it had to find the defendant guilty beyond a reasonable doubt as to every element of the crimes charged.

In this context, the Court found that the erroneous malice

instruction did not compare with the kinds of errors that automatically require reversal of an otherwise valid conviction. The error in the instruction of impermissibly shifting the burden of proof on malice was not " 'so basic to a fair trial' " that it could never be harmless. 478 U.S. at 580. The Court concluded, in finding harmless error, that "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." *Id.*

Moreover, in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993), a unanimous Supreme Court reaffirmed and clarified the type of jury instruction errors that are amenable to a harmless error analysis under the U.S. Constitution. The Court divided the class of constitutional violations that may occur during the course of a criminal proceeding into two categories:

> one consisting of "trial error[s]," which "may . . . be quantitatively assessed in the context of other evidence presented," [*Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)], and are amenable to harmless–error analysis; the other consisting of "structural defects," which "affec[t] the framework within which the trial proceeds," [499 U.S. at 310], and require automatic reversal. There is a "strong presumption" that any error will fall into the first of these categories.

*Sullivan*, 508 U.S. at 282 (Rehnquist, C.J., concurring) (citing *Rose v. Clark, supra*).

The Supreme Court clearly pointed out that a jury instruction error of erecting a presumption regarding an element of an offense falls into the first category, which is amenable to a harmless error analysis, and is quite different than an erroneous reasonable doubt instruction, which requires an automatic reversal. *Sullivan v. Louisiana, supra.* The Court explained:

> A mandatory presumption—for example . . . violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense. [Citations omitted.] But "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." *Rose v. Clark*, [478 U.S. 570, 580, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460

(1986)]. And when the latter facts "are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed." *Carella v. California*, 491 U.S. 263, 271, (1989) (Scalia, J., concurring in judgment). . . . A reviewing court may thus be able to conclude that the presumption played no significant role in the finding of guilt beyond a reasonable doubt.

508 U.S. at 280-81.

The instant case, like *Rose v. Clark, supra*, clearly falls into the first category of cases and is amenable to a harmless error analysis. The majority distinguished *Rose* from the instant case by stating that the instruction in this case did not allow the defendant to rebut the presumption of malice. However, the question is not whether the presumption of malice given in the jury instruction was rebuttable, but whether the presumption relieved the State of its duty to prove Ryan's guilt beyond a reasonable doubt of every element of the crime charged. Clearly, the presumption of malice or, better stated, the presumption of lack of just cause in this case did not relieve the State of any burden of proof. Instead, Ryan removed the issue of justification, or whether he acted with malice, by tendering an insanity defense.

In addition, there were absolutely no facts in this record setting forth a possible justification defense for the torture killing of Thimm. A full rendition of the sordid facts of this case is set forth in this court's opinion rendered as a result of Ryan's direct appeal. See *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987). However, a minimal review of the facts of this case is necessary to an understanding of the complete and utter absence of any justification defense in this record. Thimm died on or about April 30, 1985, as the result of being physically abused for several days before his death. Thimm had been given the status of slave by Ryan's father after the first of the year in 1984. About 1 month prior to his death, Thimm was chained up at night and forced to sleep on the porch of a trailer house. Thimm was chained at night by Ryan, or others, and he did not

resist this treatment in any manner.

Two days before his death, Thimm was moved to a hog confinement building and was instructed by Ryan's father to take a goat with him and have sex with it. Thimm was given a jar for water, a hot plate, and a sleeping bag. The day before Thimm died, Ryan's father inserted a greased shovel handle into Thimm's rectum several times, then Ryan performed the same act. Thimm offered no resistance. Later that same day, Ryan participated in the whipping of Thimm. At this time, Thimm was spread-eagled against an auger.

The next day Ryan participated in another whipping of Thimm because the redness from the first day was gone. During this time, Thimm was undressed except for the socks he wore. Ryan, at the direction of his father, then took his turn at shooting off the fingertips on one of Thimm's hands. The hand was propped up on a block of wood, palm up. The victim was then whipped again by Ryan. Shortly thereafter, Ryan participated in skinning one of Thimm's legs with a razor blade and pliers. Then Ryan and another codefendant each broke one of the victim's legs.

One of the trial witnesses, John David Andreas, testified that Ryan " 'thought it was kind of—it was kind of neat that he had helped kill somebody.' " *Ryan*, 226 Neb. at 65, 409 N.W.2d at 584. Andreas also testified that Ryan had later bragged about the killing and did not show remorse or sorrow.

The guilty verdict for Ryan clearly cannot be attributed to a purported error of instructing a jury that it must presume the lack of just cause if it found Ryan intentionally, but without premeditation, killed Thimm. There was no evidence whatsoever concerning just cause offered by Ryan or any of the other defendants at trial. The only defense tendered by Ryan at trial was insanity. Ryan claimed he did not appreciate the wrongfulness of his conduct because of his age and the influence that his father exerted over him. The jury was properly instructed on the insanity defense, and it clearly rejected the defense that Ryan tendered at trial.

Therefore, even if there was error in the instructions in this case, "the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (Emphasis in original.) See

*Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 2081, 124 L. Ed. 2d 182 (1993).

### III. CONCLUSION

For the above reasons, I would find Nebraska's second degree murder statute to be clear, unambiguous, and valid in all respects. In my opinion, the jury was properly instructed, and Ryan's motion for postconviction relief was appropriately denied by the trial court.

Even if the jury was erroneously instructed to presume malice from certain predicate facts in this case, such an instruction was harmless beyond a reasonable doubt based on a proper application of the standards set forth by the U.S. Supreme Court. Assuming that the jury should have received an instruction on malice in the instant case—what possible justification or excuse existed in this record? Rather than theorizing about absurd consequences in the abstract, this court, as an institution, need concern itself with avoiding absurd consequences in second degree murder cases that we are called upon to decide. It is difficult to conceive a more absurd consequence than the granting of a new trial for Ryan based on the facts of this case and the instructions that were given to the jury.

WRIGHT and CONNOLLY, JJ., join in this dissent.

CONNOLLY, J., dissenting.

Once again, I dissent on the malice issue.

In reviewing the criminal code which became operative on July 1, 1978, the Legislature deliberately eliminated malice as an element of second degree murder. "In construing a penal statute, a court cannot supply language which is absent from the statutory definition for a criminal offense." *State v. Schaaf*, 234 Neb. 144, 157, 449 N.W.2d 762, 770 (1989). Also, it will be presumed that the Legislature, in adopting an amendment, intended to make some change in the existing law and that the courts will endeavor to give some effect thereto. *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994). Nonetheless, the majority has once again, by judicial fiat, determined that malice is an essential element of second degree murder.

The majority reasons that malice must be inserted as a material element of second degree murder to avoid "the absurd consequence of an overbroad murder statute making certain legal acts illegal." The majority opinion suggests that law enforcement officers who kill in the line of duty, prosecutors who successfully persuade a court to sentence a convicted murderer to death, and the executioner who carries out any such sentence could all be charged with second degree murder for performing their respective duties.

This reasoning is nonsensical. The general purpose of our criminal code is to forbid and prevent only conduct that unjustifiably and inexcusably inflicts or threatens substantial harm to individual or public interests. See Neb. Rev. Stat. § 28-102(1) (Reissue 1989). If one follows the majority's opinion to its logical conclusion, then a number of criminal statutes that proscribe intentional or knowing conduct, but do not include the word "malice," could be construed similarly.

For example, our first degree false imprisonment statute, Neb. Rev. Stat. § 28-314 (Reissue 1989), would require the inclusion of the word "malice" because otherwise a police officer performing his or her duty by handcuffing a criminal suspect could be charged with false imprisonment. Likewise, our assault statutes, Neb. Rev. Stat. §§ 28-308 to 28-310 (Reissue 1989), would require malice because a police officer who causes bodily injury to a criminal suspect that physically resists arrest could be charged with assault. As one can see, the majority opinion poses the potential danger of leading to similar absurd results in other areas of our penal law.

The majority's tortuous reasoning has created a Jabberwocky decision in which rules are subject to change without notice to the parties or the trial court. This should not be.

WRIGHT and GERRARD, JJ., join in this dissent.

WRIGHT, J., dissenting.

I reiterate my dissent as stated in *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994), and I join the dissents of Justices Connolly and Gerrard.

I cannot agree with any of the reasoning used by the majority to justify its conclusion that malice is an element of second

degree murder. It is my belief that justice is not well served by the majority's opinion.

CONNOLLY and GERRARD, JJ., join in this dissent.