STATE OF NEBRASKA, APPELLEE, V. CALVIN J. WHITE,
APPELLANT.

543 N.W.2d 725

Filed February 16, 1996.   No. S–95–342.

382

Vicky L. Johnson, Fillmore County Public Defender, for appellant.

Don Stenberg, Attorney General, and Barry Waid for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Having had his convictions for second degree murder, use of a firearm to commit the murder, and theft of an automobile affirmed on direct appeal in *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993) (*White I*), the defendant-appellant, Calvin J. White, filed in the district court the subject motion for postconviction relief. He asserted therein that he was denied his

rights under both the Constitutions of the United States and of this state in that the convicting jury was not instructed that malice is an essential element of second degree murder and that trial counsel's failure to raise that issue on direct appeal rendered counsel ineffective. The district court overruled the postconviction motion, and White appealed. Because the sentence for the murder was imprisonment for life, the appeal, pursuant to the provisions of Neb. Rev. Stat. § 24–1106(1) (Cum. Supp. 1994), was docketed in this court.

Inasmuch as White does not argue any claim of error with respect to the theft conviction, we confine ourselves to a consideration of his second degree murder and related use of a firearm convictions.

## JURY INSTRUCTIONS

As the facts of the crime are set forth in *White I*, they are not repeated here. Suffice it to say that the plaintiff-appellee, State of Nebraska, concedes that no jury instruction specifically advised the jury that malice is an element of second degree murder. However, it urges that the instructions as a whole sufficiently informed the jury of the elements of second degree murder, including the element of malice.

One of the trial court's instructions advised the jury that malice is that condition of the mind shown by "intentionally doing a wrongful act without just cause or excuse"—a "willful or corrupt intention of the mind." It then, in a single step instruction, directed the jury to consider first whether White was guilty of first degree murder. The jury was told that if it determined that White was not guilty of first degree murder, it was then to determine whether White was guilty of second degree murder. In pertinent part, the step instruction further read:

> The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict [White] of murder in the first degree are:
> 1. That [he] did unlawfully kill Patricia Cool;
> 2. That [he] did so purposely and with deliberate and premeditated malice;
> . . . .

5. That [he] did not act in self defense . . . .

. . . .

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict [White] of the crime of murder in the second degree are:

1. That [he] caused the death . . . .
2. That [he] did so intentionally but without premeditation;
3. That [he] did not act in self defense.

### Effect of Step and Criminal Intent Instructions.

It is true, of course, that jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *State v. Lowe*, 248 Neb. 215, 533 N.W.2d 99 (1995).

The separate criminal intent instruction, which defined the intent referred to in the step instruction as a mental process determinable from White's words, acts, and the facts surrounding his conduct, merely referred the jury to the step instruction to determine if White had the criminal intent required by the step instruction. The fact that malice was included as an element of first degree murder does not overcome the deficiency in defining second degree murder. Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict. *Schluter v. State*, 151 Neb. 284, 37 N.W.2d 396 (1949); *Webber v. City of Scottsbluff*, 150 Neb. 446, 35 N.W.2d 110 (1948). Under that presumption, the jury would have understood that once it determined that White was not guilty of first degree murder, it was no longer concerned with the matter of malice.

### Rejection of Self-Defense Claim.

The State further argues, however, that the jury found the equivalent of malice when it rejected White's self-defense claim.

The jury was instructed that one of the elements of the crime of second degree murder was that White did not act in self-defense. Consequently, by finding him guilty of second

degree murder, the jury necessarily rejected White's claim that he acted in self-defense. From that, the State goes on to conclude that the jury's rejection of White's self-defense claim, the only justification or excuse offered at trial, is the same as a finding that White acted with malice. Thus, according to the State, as self-defense and malice are mutually exclusive terms, the absence of one implies the existence of the other.

In support of its theory, the State directs our attention to *Carleton v. State*, 43 Neb. 373, 61 N.W. 699 (1895), in which the defendant who was convicted of first degree murder complained that the jury instructions would have allowed the jury to convict him of a malicious killing even though the jury found that he had killed in self-defense. The *Carleton* court stated:

> We cannot see how self-defense and malice could combine, nor how, under the instructions, it was possible for the jury to believe they could co-exist. The jury was instructed that in order to make out a case of self-defense the shooting must be for the purpose of self-preservation, and they were also told that in order to be malicious the shooting must have been from an unlawful and unjustifiable motive. We think that these rules are correct; and to say that a shooting is in self-defense and at the same time malicious is a contradiction in terms.

43 Neb. at 407, 61 N.W. at 710. The State argues that the reason the concepts are a "contradiction in terms" is that when a person's actions are guided by fear for oneself, they are not guided by malice.

The State also points for support to *State v. Blackson*, 245 Neb. 833, 515 N.W.2d 773 (1994). In *Blackson*, a case where malice was not included as an element in the second degree murder instruction, we affirmed a conviction for second degree murder, resting our decision in part on the fact that the trial court had instructed the jury through a separate instruction as to justification for the use of force by the defendant. But the jury's rejection of White's self-defense claim is not the equivalent of a finding of malice. While it is true that self-defense cannot coexist in a murder case with malice, the converse is not true. The absence of self-defense may coexist

with the absence of malice. This is so because in order to successfully assert the claim of self-defense, one must have both a reasonable and good faith belief in the necessity of using deadly force. *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253 (1993).

It is important to remember that malice, like intent, concerns the state of mind of the slayer. *Id*. It denotes a condition of the mind which is manifested by intentionally doing a wrongful act without just cause or excuse. *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983). Since one who acts in self-defense does so with a protective intent rather than with a criminal intent devoid of justification or excuse, such person does not act with malice and cannot be convicted of second degree murder.

We have acknowledged in our prior holdings, beginning with *Carleton, supra*, that self-defense can negate malice. See, *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980); *State v. Kimbrough*, 173 Neb. 873, 115 N.W.2d 422 (1962). In *Carleton*, the defendant sought to introduce evidence concerning the temper and disposition of the victim in order to support his claim of self-defense. The court stated that in a homicide case, after the defendant has introduced evidence tending to show self-defense, evidence of the ferocity or violent disposition of the victim is admissible for the purpose of showing either " 'that the defendant was acting in terror, and hence incapable of that specific malice necessary to constitute murder in the first degree; or . . . that he was in such apparent extremity as to make out a case of self-defense; or . . . that the deceased's purpose in encountering the defendant was deadly.' " *Carleton v. State*, 43 Neb. 373, 397, 61 N.W. 699, 707 (1895).

Although *Carleton* and its progeny speak in terms of negating the malice necessary for a conviction of first degree murder, the statement is equally applicable to second degree murder. Second degree murder is distinguishable from first degree murder only in the absence of the requirement of deliberation and premeditation. *State v. Payne*, 205 Neb. 522, 289 N.W.2d 173 (1980). Both offenses require the State to prove that the defendant acted with malice.

Thus, to the extent *Blackson, supra*, can be read to imply that the rejection of a self-defense claim equated to a finding that

the defendant therein acted with malice, it is overruled.

The *White I* jury was instructed that White did not act in self-defense if the State proved beyond a reasonable doubt that he had not "reasonably believed that his use of deadly force was immediately necessary to protect him against death or serious bodily harm." Because the instruction thereby embodied the concepts of "reasonableness" and "good faith belief" in the single phrase "reasonably believed," the jury could reject White's self-defense claim on the ground that while unreasonable, he did in fact believe in the necessity of using deadly force. The existence of such unreasonable but actual, or good faith, belief would negate the existence of malice. Thus, it becomes clear that the jury's negative finding as to self-defense in this case is not the equivalent of a finding that White acted with the requisite malice.

In sum, contrary to the view of the State, the instructions as a whole failed to adequately convey to the jury that malice was a material element of second degree murder.

## NONHARMLESS ERROR

In claiming that because of the trial court's error in instructing the jury, he is entitled to a new trial on his second degree murder and use of a firearm convictions, White invokes provisions of both the federal Constitution and the Constitution of this state. Because the analysis which follows establishes that White is entitled to a new trial on the aforesaid convictions under the Constitution of Nebraska, we do not reach the question as to whether such is also the case under the federal Constitution.

While in making our analysis of White's rights under the Nebraska Constitution, we cite to U.S. Supreme Court and Nebraska cases which rely on U.S. Supreme Court and other federal cases, we do so only for the purpose of guidance in interpreting our own Constitution, not because we consider any U.S. Supreme Court or other federal case to compel the result we reach.

Neb. Const. art. I, § 3, provides that no person shall be deprived of liberty "without due process of law," and Neb. Const. art. I, § 11, provides that the accused in a criminal

prosecution shall have the right to "trial by an impartial jury." These provisions require that criminal convictions rest upon a jury determination that a criminal defendant is guilty beyond a reasonable doubt of every element of the crime with which the defendant is charged. See, *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (interpreting similar provisions of U.S. Constitution); *State v. Ryan, ante* p. 218, 543 N.W.2d 128 (1995); *State v. Lowe*, 248 Neb. 215, 533 N.W.2d 99 (1995); *State v. Plant*, 248 Neb. 52, 532 N.W.2d 619 (1995); *State v. Eggers*, 247 Neb. 989, 531 N.W.2d 231 (1995); *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995), *cert. denied* ____ U.S. ____, 116 S. Ct. 563, 133 L. Ed. 2d 488.

We have said that in a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Salamon*, 241 Neb. 878, 491 N.W.2d 690 (1992); *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). And we have held that even a constitutional error which was harmless beyond a reasonable doubt does not warrant the reversal of a criminal conviction. See *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992).

We have also recognized, however, that harmless error review looks to the basis on which the jury actually rested its verdict. Thus, the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994).

In considering the matter of harmless error in the context of the due process and jury trial requirements of the federal Constitution, the U.S. Supreme Court, in *Sullivan, supra*, distinguished between trial error, which can be harmless, and structural error, that is, error which vitiates all the jury's factual findings, which cannot be harmless, and concluded that the giving of a constitutionally deficient reasonable doubt instruction constituted nonharmless structural error. In explaining why this is so, the *Sullivan* Court wrote:

Once the proper role of an appellate court engaged in

the [*Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967),] inquiry is understood, the illogic of harmless–error review in the present case becomes evident. Since . . . there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of *Chapman* review is simply absent. There being no jury verdict of guilty–beyond–a–reasonable–doubt, the question whether the *same* verdict of guilty–beyond–a–reasonable–doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless–error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough.

(Emphasis in original.) 508 U.S. at 280.

We conclude that where the jury has not been instructed as to a material element of a crime, there is no verdict within the meaning of Neb. Const. art. I, § 11. Consequently, there is here no object on which a harmless error analysis can operate. The most that an appellate court could say would be that a jury would surely have found White guilty beyond a reasonable doubt, not that the jury's actual finding of guilt beyond a reasonable doubt would surely not have been different absent the constitutional error. That is not enough; Neb. Const. art. I, §§ 3 and 11, require more than appellate speculation about a hypothetical jury's action, or directed verdicts for the State would be sustainable on appeal. There must be an actual jury finding of guilt.

## CONCLUSION

The foregoing makes it unnecessary for us to determine whether trial counsel's failure to have questioned the second degree murder instruction rendered him ineffective. Consistent with our prior holdings that the failure to instruct a jury that malice is an element of second degree murder requires the granting of postconviction relief, *State v. Plant*, 248 Neb. 52,

532 N.W.2d 619 (1995), and *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995), *cert. denied* ____ U.S. ____, 116 S. Ct. 563, 133 L. Ed. 2d 488, we reverse the judgment of the district court and remand the cause for a new trial on the second degree murder and use of a firearm charges in accordance with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.

GERRARD, J., dissenting.

I dissent from the result reached by the majority for the reasons set forth in my dissenting opinion in *State v. Ryan, ante* p. 218, 543 N.W.2d 128 (1996), Justice Connolly's dissenting opinion in *State v. Ryan, supra*, and Justice Wright's dissenting opinions in *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995), *cert. denied* ____ U.S. ____, 116 S. Ct. 563, 133 L. Ed. 2d 488; *State v. Eggers*, 247 Neb. 989, 531 N.W.2d 231 (1995); and *State v. Plant*, 248 Neb. 52, 532 N.W.2d 619 (1995).

I write separately because the majority is departing from a part of its previous rationale in second degree murder jurisprudence. The majority concludes in this case that the trial court erred by not specifically instructing the jury that "malice" is an element of second degree murder and that this error is a structural one not amenable to a harmless error analysis. In arriving at these conclusions, the majority discusses (1) a concept of "protective intent," not found in our justification statutes, and (2) introduces a harmless error analysis for second degree murder cases based solely on the Constitution of Nebraska. I disagree with the holding and the expanded rationale of this case.

## JURY INSTRUCTIONS

The majority holds that the instructions given failed to adequately convey to the jury that malice was a material element of second degree murder.

In my opinion, even if malice is a judicially supplied element of second degree murder, the instructions given in this case, when read as a whole, adequately convey to the jury the very definition of malice in conjunction with the crime of second

degree murder. Malice is defined as that condition of mind which is manifested by intentionally doing a wrongful act without just cause or excuse. *State v. Ryan, supra.*

*Criminal Intent.*

In this case, instruction No. 9 informed the jurors that they must find Calvin J. White acted with the requisite *criminal intent* when they were told:

> Intent is a mental process and it therefore generally remains hidden within the mind where it is conceived. . . . It may, however, be inferred from the words and acts of the defendant and from the facts and circumstances surrounding his conduct. *But before that intent can be inferred from such circumstantial evidence alone, it must be of such character as to exclude every reasonable conclusion except that defendant had the required intent.* . . . It is for you to determine from all the facts and circumstances in evidence whether or not the defendant committed the acts complained of and whether at such time he had the *criminal intent required* by [the] Instruction [for first or second degree murder].

(Emphasis supplied.)

Thus, the jury was instructed that only a finding of *criminal intent* would support a guilty verdict and that they must exclude every other reasonable conclusion, except that White acted with criminal intent. Accordingly, when the jury convicted White of second degree murder, it necessarily found, beyond a reasonable doubt, White acted with criminal intent, and only criminal intent, when he intentionally caused the death of Patricia Cool.

*Lack of Justification or Excuse.*

In Nebraska, the use of deadly force in self-defense is a statutorily defined affirmative defense. Neb. Rev. Stat. § 28–1409(4) (Reissue 1989) mandates that "[t]he use of deadly force shall not be justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily harm, kidnapping or sexual intercourse compelled by force or threat . . . ." In addition, this court has held that in order to successfully assert the claim of self-defense, one must have both a reasonable and good faith

belief in the necessity of using deadly force. *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253 (1993).

Instruction No. 5 in this case informed the jury that a material element of second degree murder was that White did not kill in self-defense and that the State had the burden of proving the lack of self-defense, beyond a reasonable doubt. Instruction No. 10 told the jurors that in order for White to act in self-defense, he must

> reasonably [believe] that his use of deadly force was immediately necessary to protect him against death or serious bodily harm . . . .
>
> . . . .
>
> The fact that [White] may have been wrong in estimating the danger does not matter so long as there was a reasonable basis for what he believed and he acted reasonably under the circumstances as they existed at the time[.]

Thus, these instructions, when read as a whole, correctly state the law, are not misleading, and adequately cover the issues, as the instructions tell the jury it must find, beyond a reasonable doubt, White subjectively believed that the use of deadly force in self-defense was immediately necessary and that this subjective, good faith belief was reasonable. See *State v. Lowe*, 248 Neb. 215, 533 N.W.2d 99 (1995). Accordingly, when the jury convicted White of second degree murder, it necessarily concluded either that White did not subjectively believe that the use of deadly force in self-defense was immediately necessary or that he was unreasonable in his belief, or both.

The majority asserts that there are circumstances when "[t]he absence of self-defense may coexist with the absence of malice." It is suggested that when one acts in self-defense "with a protective intent" rather than with "a criminal intent devoid of justification or excuse," such person does not act with malice and cannot be convicted of second degree murder. I disagree.

There are times when a killer claims a subjective honest belief that his actions were necessary for his safety ("protective intent"), even though, on an objective appraisal by a judge or a

jury, the circumstances are found to be otherwise. In Nebraska, such a mistaken subjective belief that results in the intentional killing of another human being is not justified by statute and, under the law of this state, is murder. See, *State v. Thompson, supra*; *State v. Stueben*, 240 Neb. 170, 481 N.W.2d 178 (1992).

An intentional killing is either justified, as defined by statute, or it is murder, as defined by statute. See, Neb. Rev. Stat. §§ 28–1406 through 28–1416 (Reissue 1989); Neb. Rev. Stat. §§ 28–303 and 28–304 (Reissue 1989). There are no in-between crimes, nor are there any subjective, in-between justifications for an intentional killing. See *State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994). The principle which underlies these rules is that human life should not be made to depend upon conditions so unreliable and hazardous as the bare belief of any person that he or she is in danger of death or bodily harm. *State v. Thompson, supra*; *State v. Stueben, supra*.

Therefore, an *unreasonable*, albeit subjective, good faith belief in the necessity of using deadly force does not negate the existence of "malice," as that term is defined, in Nebraska. The jury was correctly instructed regarding the elements of second degree murder and White's statutory claim of self-defense.

## HARMLESS ERROR ANALYSIS

The majority, for the first time, conducts a harmless error analysis in a second degree murder case under the Constitution of Nebraska and does not reach the question of whether such an analysis is consistent with cases under the federal Constitution. For the reasons delineated in my dissent in *State v. Ryan, ante* p. 218, 543 N.W.2d 128 (1996), the majority's harmless error analysis under the Constitution of Nebraska is not consistent with the U.S. Supreme Court's harmless error analysis under the federal Constitution. The U.S. Supreme Court's harmless error analysis, having been developed and refined over 29 years since *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), is consistent and persuasive, and I would not depart from it.

The majority found that the error in this case is a structural one, not amenable to a harmless error analysis. Quoting extensively, but "only for the purpose of guidance," from

*Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993), the majority concludes that since the jury was not told malice is an element of second degree murder,

> there is here no object on which a harmless error analysis can operate. The most that an appellate court could say would be that a jury would surely have found White guilty beyond a reasonable doubt, not that the jury's actual finding of guilt beyond a reasonable doubt would surely not have been different absent the constitutional error.

However, *Sullivan* must be read in the context of a "deficient reasonable–doubt instruction," and a unanimous U.S. Supreme Court went on to guide us that

> [i]nsofar as the possibility of harmless–error review is concerned, the jury–instruction error in this case is quite different from the jury–instruction error of erecting a presumption regarding an element of the offense. A mandatory presumption . . . violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense. [Citations omitted.] But "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." [Citation omitted.] And when the latter facts "are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed." [Citations omitted.] A reviewing court may thus be able to conclude that the presumption played no significant role in the finding of guilt beyond a reasonable doubt.

113 S. Ct. at 2082.

The majority's bare conclusion that the error in this case is a "structural" one, not amenable to a harmless error analysis, is not consistent with Supreme Court precedent under the federal Constitution and is not persuasive. The instant case clearly falls into the "trial error" category of cases and is amenable to a harmless error analysis under the Supreme Court's interpretation of the federal Constitution. See, *Sullivan v. Louisiana, supra*; *Rose v. Clark*, 478 U.S. 570, 106 S. Ct.

3101, 92 L. Ed. 2d 460 (1986).

In conducting a harmless error analysis under the federal Constitution, concerning the presumption of malice in this case, we must determine whether there are facts that are so closely related to the ultimate fact to be presumed (malice) that no rational jury could find those facts without also finding that ultimate fact. *Sullivan v. Louisiana, supra.* If so, then making those findings is functionally equivalent to finding the element required to be presumed (malice). *Id.*

In this case, the ultimate fact to be presumed is malice, the intentional doing of a wrongful act without just cause or excuse. Clearly, the jury found several facts, beyond a reasonable doubt, which make those findings the functional equivalent to a finding of malice.

First, the jury found, beyond a reasonable doubt, White intentionally caused the death of Cool; that is, White acted solely with criminal intent as defined in instruction No. 9. White engaged in the intentional doing of a wrongful act.

Second, the jury found, beyond a reasonable doubt, White did not act in self-defense. The effect of this finding was to say either that White did not subjectively believe that the use of deadly force in self-defense was immediately necessary, or that he was unreasonable in his belief of the need to use deadly force, or both.

Third, no evidence appears in the record which would allow a rational jury to even consider the existence of some other justification or excuse other than self-defense.

Thus, the jury found the existence of all the necessary facts to support the conclusion, beyond a reasonable doubt, White was without just cause or excuse when he intentionally killed Cool. These findings are so closely related to the ultimate fact, the existence of malice, that the findings are the functional equivalent of a finding of malice. Accordingly, the State was not relieved of its burden to prove beyond a reasonable doubt every element of the crime charged, and White received a full and fair jury trial regarding each element of second degree murder.

The essence of a harmless error inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict

actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). It can surely be stated that beyond a reasonable doubt, this verdict was unattributable to the purported instruction error when every element of malice was found against White, notwithstanding the fact that the word "malice" was not included in the instructions as a "material element" of the crime of second degree murder.

WRIGHT and CONNOLLY, JJ., join in this dissent.