IN RE INTEREST OF JOSEPH L., JR.,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,
V. DEANNA L., APPELLANT, AND JOSEPH L., SR.,
APPELLEE AND CROSS-APPELLANT.
598 N.W.2d 464

Filed July 20, 1999.    No. A-98-1192.

Susan Ann Koenig, of the Law Office of Susan Ann Koenig, for appellant.

James P. Miller, Sarpy County Attorney, Gary E. Brollier, and Ann E. Ebsen for appellee State.

James J. Regan for appellee Joseph L., Sr.

HANNON, SIEVERS, and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Deanna L. appeals and Joseph L., Sr., cross-appeals from an order by the separate juvenile court of Sarpy County, Nebraska, terminating their parental rights in their son, Joseph L., Jr. (Joey). For the reasons set forth below, we reverse, and remand with directions.

## BACKGROUND

On February 1, 1996, the Sarpy County Attorney filed a petition in the separate juvenile court of Sarpy County, Nebraska, alleging that Joey (then age 6 months) and Teresa L. (then age 11) were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) by reason of the fault or habits of their parent, guardian, or custodian. Joey is the natural son of Deanna and Joseph, while Teresa is the natural daughter of Joseph and Pam M. An amended petition was filed on February 2, alleging that Joey and Teresa had been left alone overnight in their residence.

An adjudication hearing was held on April 2, 1996, at which time, Deanna and Joseph admitted that the children had been left alone overnight and that the children lacked proper parental care. The court adjudicated the children as being within the scope of § 43-247 and set a dispositional hearing for May 16. Joey was placed with Deanna and Joseph, and Teresa with Pam. Following the May 16 hearing, the court ordered that the children remain in the custody of the then Nebraska Department of

Social Services (DSS) and ordered Deanna and Joseph to participate in counseling, to abstain from alcohol and nonprescribed controlled substances, and to participate in chemical dependency programs. On August 25, DSS removed Joey from Deanna and Joseph's home. According to the DSS report, Deanna and Joseph were charged with child abuse after Bellevue, Nebraska, police officers, acting on a telephone report, found them intoxicated in their home while Joey was asleep in his crib. Joey was placed with Joseph's brother, Frank L., and Frank's wife, Kari L., who at that time lived in Des Moines, Iowa.

On November 21, 1996, the court held a further review. According to the DSS report entered at the hearing, both Deanna and Joseph had made some progress with chemical dependency programs but had struggled with maintaining their sobriety. The court continued the hearing and scheduled a further evaluation in 90 days. On April 23, 1997, a further dispositional hearing was held. At that time, the court accepted a stipulation that Joseph's ability to provide proper care to Joey was "impaired" by "chemical and alcohol issues" and that Deanna's ability to provide care was similarly "impaired" by "alcohol issues." The court ordered that Joey remain in the custody of the current Nebraska Department of Health and Human Services (DHHS). The court also terminated jurisdiction over Teresa and removed her from custody of DHHS.

Another review hearing was held on July 23, 1997. At that hearing, the evidence showed that Deanna and Joseph had separated the previous February and that Deanna was no longer living in the family home. Joey remained with Frank and Kari, who had moved to Omaha in July. On or about August 15, Joey was placed with Deanna but was removed from her home on or about September 11, after Deanna was arrested for driving under the influence. A few days later, Joey was placed with Joseph, where he remained until February 20, 1998. On that date, a social services worker removed Joey, following a report that Joseph had been drinking in violation of the court's order and had driven with Joey in the car while apparently under the influence of alcohol.

On February 23, 1998, a supplemental petition was filed, seeking termination of Deanna's and Joseph's parental rights over Joey. The petition alleged that both Deanna and Joseph had failed to complete chemical dependency programs (count I-A), had failed to abstain from the use of alcohol and nonprescribed controlled substances (count I-B), had failed to cooperate with DHHS (count I-C), had failed to attend DHHS-approved counseling programs (count I-D), and had failed to attend weekly meetings of Alcoholics Anonymous (count I-E). The petition further alleged that Deanna had made an unsupervised visitation with Joey in violation of the court's order (count I-F) and, finally, that Joseph had failed to pay court-ordered court costs (count I-G). The petition further alleged, in count II, that Joey had been in out-of-home placement for 18 or more months and that Deanna and Joseph had failed to correct the conditions leading to the out-of-home placement.

On March 31, 1998, the court heard a motion for visitation rights filed by Joseph. Both Deanna and Joseph were present and represented by counsel. At that time, the court advised both Deanna and Joseph that a supplemental petition for termination of their parental rights had been filed, advised Deanna and Joseph of their due process rights with regard to termination of parental rights proceedings, and set the matter for May 1.

That hearing was subsequently rescheduled to May 21, 1998, with notice of rescheduling sent to both Deanna and Joseph and their counsel. An adjudication hearing was held on May 21. Deanna was not present. On that date, she was involved in in-house alcoholism counseling. She contacted her attorney's office and spoke with an associate attorney from that office, who subsequently appeared at the hearing, advised the court that Deanna would not appear, and asked to be excused. The court excused the associate and proceeded with the adjudication hearing, which included hearing motions, ruling on offers of exhibits, and receiving testimony by four witnesses.

At the conclusion of the May 21, 1998, hearing, the court made the following comments:

> [F]or the record, this is a bit unusual, the mother failed to appear, her counsel didn't appear, but Mr. Ryan [the asso-

ciate attorney] appeared for her counsel and asked to be excused because he had another hearing.

To protect the mother's due process rights, I'm going to direct that the court reporter — and I'll worry about whether that expense should be collected later — but I'll order that the court reporter do a partial transcript of the testimony . . . . I'll also direct that copies of Exhibits 26 through 30 with that partial transcript be sent by certified mail to . . . her counsel of record.

The court then continued the hearing until June 25, 1998. The hearing was ultimately held on August 18 and concluded on August 27. All counsel and parties were present at those hearings. On September 14, the court entered its order terminating the parental rights of Deanna and Joseph over Joey. Specifically, the court dismissed, as to Joseph only, the allegation that he had failed to complete chemical dependency and aftercare programs (count I-A) and dismissed against both Deanna and Joseph allegations that they had failed to participate in counseling programs (count I-D). The court also dismissed the allegation that Deanna had made an unauthorized unsupervised visit to Joey (count I-F) and the allegation that Joseph had failed to pay court costs (count I-G). The court found the State had proved by clear and convincing evidence that Deanna had failed to complete chemical dependency and aftercare programs (count I-A) and that both Deanna and Joseph had failed to totally abstain from alcohol and nonprescribed controlled substances (count I-B), had failed to fully cooperate with DHHS in its provision of services (count I-C), and had failed to attend weekly meetings of Alcoholics Anonymous (count I-E). The court concluded that the State had established by clear and convincing evidence that Joey fell within Neb. Rev. Stat. § 43-292(1) (Reissue 1998) (juvenile abandoned 6 months or more prior to filing of the petition) and (6) (juvenile whose family has failed to correct conditions leading to out-of-home placement). The court further concluded that termination of parental rights of both Deanna and Joseph was in Joey's best interests.

Deanna filed an amended motion for new trial, with new counsel, on October 29, 1998. The motion for new trial was heard on November 4, 1998. In support of her motion, Deanna

introduced into evidence her affidavit, in which she averred, inter alia, (1) that she was unaware that the May 21 hearing was to deal with her parental rights, (2) that she had been unable to attend because of her participation in court-ordered alcohol treatment, and (3) that she had been advised by her counsel's office that she would be represented at the hearing. The motion for new trial was denied on November 6. Deanna filed this appeal on November 16.

Joseph filed his notice of appeal on November 18, 1998. Since his appeal was filed after Deanna's notice of appeal, we will treat Joseph as a cross-appellant. See Neb. Ct. R. of Prac. 1C and 1E (rev. 1996).

## ASSIGNMENTS OF ERROR

Deanna's assignments of error may be consolidated into the following three: (1) The trial court failed to accord her due process during the May 21, 1998, hearing, (2) the trial court erred in finding that termination of parental rights was in Joey's best interests, and (3) the trial court erred in denying her motion for new trial.

Joseph makes four assignments of error, which we have consolidated into two: (1) The trial court erred in finding that there was clear and convincing evidence that Joseph failed to comply with a court-ordered reunification plan and (2) the trial court erred in finding that termination of parental rights was in Joey's best interests.

## STANDARD OF REVIEW

In reviewing any final order of a juvenile court, an appellate court is to try the factual questions de novo on the record, reaching a conclusion independent of the findings of the juvenile court; provided, however, that when the evidence is in conflict, the appellate court considers and may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *In re Interest of Constance G.*, 247 Neb. 629, 529 N.W.2d 534 (1995).

The determination of whether the procedures afforded an individual comport with the constitutional requirements for procedural due process presents a question of law. *Billups v.*

*Nebraska Dept. of Corr. Servs. Appeals Bd.*, 238 Neb. 39, 469 N.W.2d 120 (1991).

## ANALYSIS

*Deanna's Due Process Rights.*

■ The parent-child relationship is afforded due process protection, and consequently, procedural due process is applicable to a proceeding for termination of parental rights. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). The concept of due process embodies the notion of fundamental fairness and defies precise definition. As the U.S. Supreme Court has noted:

> For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. "[U]nlike some legal rules," this Court has said, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." . . . Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Lassiter v. Department of Social Services*, 452 U.S. 18, 24-25, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981).

■ When a person has a right to be heard, procedural due process includes notice to the person whose right is affected by a proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding, a reasonable opportunity to refute or defend against a charge or accusation, a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation, representation by counsel, and a hearing before an impartial decisionmaker. *In re Interest of L.V., supra.*

Deanna argues that she was denied three of her procedural due process rights: the right to adequate notice, the right to

refute the charges and cross-examine witnesses, and the right to be represented by counsel.

Deanna concedes that she was provided with notice of the date and time of the May 21, 1998, hearing, but argues that the notice was insufficient. The State and the trial court disagree. However, we need not and do not address that issue, because we find that the absence of both Deanna and her counsel from that proceeding, regardless of whether she had been put on adequate notice, compels a finding that her due process rights were violated.

It is uncontroverted that Deanna was not present at the May 21 hearing. It is equally uncontroverted that she had taken appropriate steps to see that she was represented when she talked with her counsel's office the day of the hearing. It is similarly uncontroverted that the court, for whatever reason, granted her counsel's request to be excused from the proceedings and that the court then proceeded to take evidence and otherwise conduct the hearing in her absence. Nor is it controverted that no witnesses were called on behalf of Deanna, no cross-examination was conducted on her behalf, and no evidence was offered on her behalf during that proceeding.

During the hearing on Deanna's motion for new trial, the court explained its actions and rationale in the following manner:

[C]learly these proceedings weren't normal because of what occurred; however, there's a couple things I want to note for the record.

On March 31 we had an arraignment on the Supplemental Petition where I advised each parent of their rights and the potential authority of the Court with regard to the petition to terminate parental rights, and at that hearing I accepted their pleas of denial and set the matter for trial on May 1. They were keenly aware that on May 1 the matter was set on the issue of whether or not parental rights should be terminated. We went over their rights specifically on the record, and then there was a motion filed by Mr. Troia to continue that because he had a conflict and the matter was continued to May 21. So I have a difficult time believing that somebody would not under-

stand what that hearing was for when it was so clearly explained at the arraignment on March 31.

With regard to Mr. Troia's absence, which I thought was unfortunate, to use that term, Mr. Ryan did appear but I didn't want to make this case Mr. Ryan's problem because he was not the attorney of record, and that's why I specifically ordered the court reporter to prepare a bill of exceptions for the proceedings and photocopy all those exhibits and send them to Mr. Troia, which in fact occurred.

But in my review of the mother's testimony, the reason why I will take it under advisement is to review it in more detail. The evidence that was presented in her absence and the absence of Mr. Troia she confirmed during her testimony. She admitted that she had lied in court about her recovery; she admitted that she wasn't honest about her recovery. She admitted that she was in front of Judge Wester for a third offense drunk driving. She admitted that she had been drinking again. She admitted that she had been driving drunk with her son in the car. And, in fact, I noted in my memorandum opinion that both parents were at least, I thought, candid in their remarks about their past behavior and lack of compliance.

So while I will agree she wasn't represented at that hearing, the evidence that came in at that hearing was mostly against the father, but what did come in against the mother during her testimony she confirmed.

These ad hoc efforts by the court to rectify what it obviously recognized as seriously flawed proceedings are simply insufficient to cure those flaws. For a hearing of this gravity to proceed without the presence of either the party or his or her counsel rises to one of those "fundamental flaws, which never have been thought harmless," *Vasquez v. Hillery*, 474 U.S. 254, 263, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (holding that subsequent conviction cannot cure flawed grand jury process). See, also, *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (discussing "structural defects in the . . . trial mechanism, which defy analysis by 'harmless-error' standards"). Such structural errors have the effect of vitiating all findings made by the trier of fact. *State v. White*, 249 Neb. 381,

543 N.W.2d 725 (1996), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). In *White*, the Supreme Court explained:

> In considering the matter of harmless error in the context of the due process and jury trial requirements of the federal Constitution, the U.S. Supreme Court, in *Sullivan* [*v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993),] distinguished between trial error, which can be harmless, and structural error, that is, error which vitiates all the jury's factual findings, which cannot be harmless . . . .

249 Neb. at 388, 543 N.W.2d at 731.

▪ Indeed, even if the trial court's error were deemed subject to harmless error analysis, we would still hold that reversal is required. As the *White* court also explained:

> We have said that in a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. . . . And we have held that even a constitutional error *which was harmless beyond a reasonable doubt* does not warrant the reversal of a criminal conviction. . . .
>
> We have also recognized, however, that harmless error review looks to the basis on which the jury actually rested its verdict. Thus, *the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.*

(Citations omitted.) (Emphasis supplied.) *Id.* at 388, 543 N.W.2d at 730-31. Because, in the instant case, we cannot say that the outcome of the termination proceedings, as they relate to Deanna, was "surely unattributable to the error" of proceeding in Deanna's absence, we cannot say that the error was harmless, regardless of any subsequent actions by the court. We accordingly reverse, and remand with directions for a new hearing on the issue of whether Deanna's parental rights over Joey should be terminated.

*Joseph's Case.*

In its order, the court found that the State had established that Joey had been abandoned for purposes of § 43-292(1) and that Deanna and Joseph had failed to correct conditions leading to his out-of-home placement, pursuant to § 43-292(6). The court further found that it had been proved that termination of the parental rights of Deanna and Joseph was in Joey's best interests. Joseph contends that the State failed to meet its burden of proof on each of these issues.

■ Section 43-292 provides that a court may terminate parental rights when such action is in the best interests of the child and one or more of the statutorily specified conditions exist. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). In addition to the statutory grounds, a parent's failure to make reasonable efforts to comply with a court-ordered reunification plan provides an independent reason justifying termination of parental rights. *Id.*

■ The grounds for terminating parental rights must be established by clear and convincing evidence, which is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *In re Interest of Constance G., supra.* Moreover, when parents cannot rehabilitate themselves within a reasonable time, the best interests of a child require that a final disposition be made without delay. *Id.*

■ The court found that two statutory grounds for termination were proved, § 43-292(1) and (6). Section 43-292(1) provides that the court may terminate parental rights when the court finds that the parent has abandoned the juvenile for 6 months or more immediately prior to the filing of the petition. Abandonment, for purposes of determining whether termination of parental rights is warranted under § 43-292(1), has been described as a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and opportunity for the display of parental affection for the child. *In re Interest of Theodore W.*, 4 Neb. App. 428, 545 N.W.2d 119 (1996). The question of whether a parent has abandoned a child so as to justify termination of parental rights is largely one of intent, to be determined

in each case from all of the facts and circumstances. *Id.* Circumstantial evidence of intent may be used to establish abandonment for purposes of termination of parental rights. *Id.*

Having conducted a de novo review of the record, we find no evidence that Joseph has abandoned Joey, and accordingly, we reverse that portion of the order adjudging Joey as a child within § 43-292(1).

We turn next to the trial court's finding that Joey is a child within § 43-292(6). That section provides that termination is warranted "[f]ollowing a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, . . . under the direction of the court, have failed to correct the conditions leading to the determination."

In order to justify termination of parental rights pursuant to this subsection, the State must prove by clear and convincing evidence that (1) the parent has failed to comply, in whole or in part, with a reasonable provision material to the rehabilitative objective of the plan and (2) in addition to the parent's noncompliance with the rehabilitative plan, termination of parental rights is in the best interests of the child. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

As the trial court noted, the "salient issue" in this case was "the failure of either parent to abstain from the use of alcohol or drugs." The record shows that both Deanna and Joseph have a history of alcohol problems reaching back at least as far as the April 2, 1996, adjudication and further shows that participation by both Deanna and Joseph in various programs treating drug and alcohol abuse has been a part of the case since the court's order of May 17, 1996. Moreover, in April 1997, Joseph stipulated that chemical and alcohol abuse had "impaired" his ability to care for Joey at that time. Finally, Joseph testified that he had used alcohol or marijuana until July 1998.

However, the relevant issue with regard to § 43-292(6) is not whether Joseph has problems with alcohol, but, rather, whether he is complying with the rehabilitation plan imposed by the court and the effect of those problems upon the best interests of Joey. With regard to compliance, the record shows that Joseph attended numerous counseling sessions and Alcoholics Anonymous meetings.

There is conflicting testimony as to the impact of those sessions and meetings upon Joseph's behavior. The caseworker first assigned to the case, Ann Drozd, reported in November 1996 that Joseph had made "minimal progress," and "struggled with maintaining" sobriety, a view she reiterated in her July 1997 report. However, in July 1997, Joseph's chemical dependency counselor, Steven L. Eggert, reported that Joseph's attitude toward the program was satisfactory to good, that he had attended all scheduled sessions, and that he was "very open and receptive to recovery program suggestions made by group members and therapists." This conflicting evidence is clearly short of clear and convincing. We hold, accordingly, that the State has failed to meet its burden of showing that Joseph has failed to comply with the court-ordered plan.

In holding that termination of parental rights was in Joey's best interests, the court found that

> [Joey] has lived over one-half of his life in foster care while his parents have spoiled multiple opportunities to rehabilitate themselves. They are now asking for more time and another opportunity to demonstrate their sobriety. . . . [Their] "unwillingness to comply with a rehabilitative program directed at reuniting... with (the) child and designed to secure the continued long-term health and well-being of the child compels the conclusion that termination of... parental rights to the child is in the child's best interest."

(Quoting *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990).)

We disagree. An order terminating parental rights must be based upon clear and convincing evidence and should be issued as a last resort when no reasonable alternative exists. See *In re Interest of Tabatha R.*, 252 Neb. 687, 564 N.W.2d 598 (1997). There is no evidence that in the absence of alcohol abuse, Joseph has been an unfit parent to Joey. Drozd's successor caseworker, Lili Carther, who was the caseworker during the time that Joey lived with Joseph, testified that she had no negative information about Joseph's parenting, other than unconfirmed reports of alcohol abuse, including the report that precipitated the removal of Joey from Joseph's care. Frank testified

that in the absence of alcohol abuse, Joseph was an adequate parent.

Nor does the record before us compel a finding that no reasonable alternative exists. As discussed above, we cannot say on this record that Joseph is not making progress toward alleviating the alcohol abuse that the court itself held was the "salient issue."

In short, the State has simply failed to meet its burden of showing by clear and convincing evidence that the parental rights of Joseph over Joey should be terminated. The order of the trial court is accordingly reversed.

## CONCLUSION

For the reasons set forth above, the order of the separate juvenile court of Sarpy County is reversed in its termination of Joseph's parental rights over Joey; the matter is reversed and remanded with directions for further proceedings consistent with this opinion as it relates to Deanna's parental rights over Joey.

REVERSED AND REMANDED WITH DIRECTIONS.